## Bryant v. Crossland, Police Judge, et al.

(Decided December 17, 1918.)

### Appeal from McCracken Circuit Court.

1. Judges—When Liable in Civil Suits for Acts Done in Performance of Duty.—A judicial officer, high or low, can not be made liable in a civil suit for any act done in the performance of his judicial duties, if he has jurisdiction of the person and subject matter, although his ruling may be the result of mistake of law, error of judgment, or malice, or be done corruptly.

2. Contempt—Magistrates—May Punish Witness for Contempt in Failing to Answer Questions.—A magistrate may, under section 1301 of the Kentucky Statutes, punish a witness as for contempt for failing to answer a question that is at all relevant to the subject under investigation.

3. Justices of the Peace—Magistrates—Court of Inquiry—Construction of Code.—Section 32 of the Criminal Code authorizes a magistrate to hold a court of inquiry for the purpose of ascertaining the offender, if satisfied that a public offense has been committed. Under this section a magistrate has authority to hold a court of inquiry for the purpose of ascertaining the character of the offense and the name of the offender.

4. Justices of the Peace—Magistrates—Court of Inquiry—When May be Held.—A magistrate can not hold a court of inquiry for the purpose of annoying or embarrassing people but only when he is satisfied that a public offense has been committed, and whether he is so satisfied must generally be left to his discretion.

5. Justices of the Peace—Magistrates—Court of Inquiry—When May be Held—Scope Evidence May Take.—A magistrate may hold a court of inquiry for the purpose of identifying the offense as well as the offender. In such an inquiry the evidence may take a wide range so long as it is directed to the ascertainment of the nature of the offense or the identity of the offender.

CAMPBELL & CAMPBELL for appellant.

WHEELER & HUGHES and J. K. HENDRICK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by appellant, Bryant, against C. B. Crossland, judge of the police court of the city of Paducah, and others, to recover damages for his alleged false arrest and imprisonment in the city jail by the order of Judge Crossland.

On the trial of the case in the lower court the trial judge instructed the jury to return a verdict for Crossland and the other defendants, and the plaintiff, Bryant, appeals.

The only question in the case that we need consider is whether Judge Crossland was acting within his jurisdiction when he made and issued the order under which Bryant was arrested and placed in jail; because if he was acting within his jurisdiction he was not liable according to the well settled law in this state.

The principle and its scope that exempts judicial officers from liability in civil suits for acts done in the performance of their duties was thus stated in Dixon v. Cooper, 109 Ky. 29: "The rule as to the liability of judicial officers seems to be that a judicial officer can not be held liable in a civil suit for any act done in the performance of his judicial duties, provided he has jurisdiction of the person and the subject matter; and this, though the imprisonment complained of be the result of a mistake of law, or error of judgment, or even of malice." In the opinion in that case it was further said that this rule "applies to the highest judge in the state or nation, but it also applies to the lowest officer who sits as a court and tries petty causes, and it applies, not in respect to their judgments merely, but to all process awarded by them for carrying their judgments into effect." To the same effect is Reeves v. Stewart, 150 Ky. 124; Pepper v. Mayes, 81 Ky. 673.

In McBurnie v. Sullivan, 152 Ky. 686, the court further said that "a justice of the peace, acting judiciously and within his jurisdiction, who commits one to prison for contempt of court, either civil or criminal, is not liable in an action for damages, even though he acts corruptly or maliciously. To sustain a civil action in such a case it must be shown not only that he acted maliciously or corruptly, but also that he did not have jurisdiction."

And again in Rammage v. Kendall, 168 Ky. 26, we held that "There is a general principle of universal application to all grades of judicial officers, that a judge, who is proceeding within the scope of his jurisdiction, is not liable in an action for damages for the opinion he may deliver as such judge, nor for any rule or action he may take for the conduct of the business of his court. This principle, however, does not extend to make a judicial officer immune from damages for illegal acts, which result in injuries to others or deprive them of their legal rights, when his acts are without the scope and limits of his jurisdiction. It follows that if his illegal acts are without the scope and limits of his jurisdiction, he is liable, if damages result to others from such acts, whether he is actuated by malice, corrupt and impure motives or not. In the last state of case, the fact that his motives are impure and bad are considered, only, as aggravating the damages. When the judge acts illegally, without the limits of his jurisdiction, he becomes a trespasser, and is liable in damages as such." To the same effect is Moser v. Summers, 172 Ky. 553; Clark v. Hampton, 163 Ky. 698.

With this understanding of the applicable law we come now to the circumstances of this case which appear from the record to be as follows: They have a commission form of government in Paducah, and Bryant was requested to appear before the commission at its meeting on February 17, 1917. At this meeting he was asked by one of the commissioners concerning an order purporting to have been given to a patrolman of the city by the chief of police, Luther Graham, and in response to the inquiry said that "a certain policeman told me yesterday, February 16, 1917, at Gilbert's drug store, that the chief of police had just issued instructions to notify all persons operating slot machines, dice games and punch boards to cease operating by Monday next, or else they would be warranted; that if they heard of or knew of any poker games or other gambling going on not to raid them or arrest them until he, the policeman, had first notified him, the chief."

On the afternoon of this day Bryant was summoned to appear before Judge Crossland and pursuant to the summons appeared before the judge, and after being first sworn was asked these questions: "On this morning you

stated that you had information from a policeman as follows: 'A certain policeman told me yesterday, February 16, 1917, at Gilbert's drug store, that the chief of police had just issued instructions to notify all persons operating slot machines, dice games and punch boards, to cease operating by Monday next or else they would be warranted.' 'That if they heard of or knew of any poker games or other gambling going on, not to raid them or arrest them until he, the policeman, had first notified him, the chief.' Did you make this statement? A. Yes, sir. Q. I now want to ask you the name of the policeman that told you that? A. I refuse to answer. Has there been any crime committed? By the court: Mr. Bryant, we are investigating as to whether Mr. Luther Graham, chief of police, or anyone else is guilty of misfeasance or malfeasance in office; also as to whether any gaming is going on in the city of Paducah. If so, a violation of law has been committed, and I require you to answer. A. I still refuse to answer.''

When the witness refused to answer the question Judge Crossland fined him three dollars and directed that he be confined in the jail for six hours for his contempt of court in failing to answer the question propounded, and thereupon Bryant was taken in custody by the jailer and incarcerated, where he remained for some four or five hours, and until he was released by writ of *habeas corpus.*

It further appears that Judge Crossland, at the time of questioning Bryant and ordering him sent to jail for his refusal to answer, was assuming to hold a court of inquiry for the purpose of ascertaining whether any violation of the gambling law had been committed with the knowledge of Graham as chief of police, and also for the purpose of ascertaining whether Graham, as chief of police, was guilty of malfeasance or misfeasance in office in knowingly permitting or consenting that certain forms of gambling might be engaged in within the city.

He was holding this court of inquiry under the authority of section 32 of the Criminal Code of Practice, reading as follows: "A magistrate, if satisfied that any public offense has been committed, shall have power to summon before him any person he may think proper for examination on oath concerning it, to enable him to ascertain the offender, and to issue a warrant for his arrest;" and his whole jurisdiction and authority to hold the court of in-

quiry and propound the questions asked Bryant must be found in this section as it is the only statute we have authorizing a court of inquiry to be held.

Before, however, proceeding further with the consideration of the case we may stop here to say that misfeasance or malfeasance in office is a public offense and if Judge Crossland, pursuant to this section, was holding a court of inquiry to ascertain if such a public offense had been committed, he had the power and jurisdiction to visit upon Bryant the punishment he did for his contempt of court in failing to answer the question propounded, if the question asked related to a matter that was at all relevant to the purpose for which the court of inquiry was being held. Kentucky Statutes, section 1301; Melton v. Commonwealth, 160 Ky. 642; Kerfoot v. Commonwealth, 89 Ky. 174.

It is, however, pressed on our attention by counsel for Bryant that Judge Crossland, at the time he questioned Bryant and punished him for contempt of court, was not holding a court of inquiry under section 32 of the Criminal Code, or authorized by that section to propound the questions he did to Bryant or to punish him as for contempt upon his failure to answer.

In support of this, the argument is made that under this section of the Code a magistrate is only authorized to hold a court of inquiry when he is "satisfied that a public offense has been committed" and then only for the purpose of enabling him "to ascertain the offender and to issue a warrant for his arrest." Proceeding further, counsel say that the undisputed evidence shows that Judge Crossland was not satisfied that a public offense had been committed, but on the contrary was endeavoring to discover whether a public offense had been committed, and besides, the inquiry made of Bryant was not directed to an effort to discover the identity of the offending person because the judge already knew that the offender, if any offense had been committed, was Graham, the chief of police, and this being so, he was acting without his jurisdiction because doing something not authorized by the Code.

We are not disposed, however, to give this section the narrow construction contended for by counsel. It is a useful section in the administration of the criminal law and should be liberally construed in order to accomplish

the purpose of its enactment. It is a matter of common occurrence that officers charged with the enforcement of the law often have satisfactory information that a public offense has been committed but they are not in possession of either the exact nature of the offense or the name of the offender, and this section of the Code, in our opinion, was adopted in order to authorize a magistrate, whenever he had such information as would reasonably satisfy him that a public offense had been committed, to set on foot an inquiry for the purpose of ascertaining the character of the offense he believes to have been committed and the name of the offender.

We do not, of course, mean to say that a magistrate may hold a court of inquiry merely for the purpose of exploiting his authority or subjecting people to annoyance, embarrassment or inconvenience. But the question whether the magistrate is satisfied that a public offense has been committed must be left largely to his own judgment and discretion. It is not essential that he should have conclusive evidence that a public offense has been committed before he is authorized to act under this section. It is only required that he should exercise reasonable judgment and discretion, and whether he has done this or not must usually be left to him to decide.

We can easily imagine a state of case in which the magistrate might know the name of the offender that had committed a public offense but he might not know the exact nature of the offense or the procedure that should be set on foot to determine its quality, and when this condition arises we think the magistrate may hold a court of inquiry for the purpose of identifying the offense as well as the offender if there should be any doubt about his identity. Nor is the scope of the inquiry controlled by the strict rules of evidence that would prevail in the trial of a case. It may take a wide range so long as it is directed to the ascertainment of the nature of the offense or the identity of the offender.

This case furnishes a very good illustration of our conception of the extent to which the inquiry may be directed. Here it is said, and may be admitted to be true, that the magistrate knew that if a public offense had been committed, the chief of police, Graham, was the offender; but he did not know the precise nature of the offense or have evidence sufficient to justify the issual

of a warrant. He did, however, believe that Bryant had information that would enable him to secure the presence of another witness or perhaps witnesses that would put him in possession of such facts that would enable him to institute a criminal proceeding, and this information he was entitled to secure from Bryant.

To put this in another way, a magistrate in holding a court of inquiry may not know the names of the parties who can give the information upon which a warrant might issue, but he may know the name of a witness who could give him the name or names of others who could furnish information upon which a warrant might issue, and we think the magistrate, under these circumstances, has authority to compel a witness brought before him to disclose the names of others who the magistrate may believe can give him such information as would enable him to identify the offender and describe the offense.

This, as we understand it, was the purpose of asking Bryant the question he refused to answer, and we think he was in contempt of court in so refusing.

Having reached this conclusion, the judgment should be affirmed, and it is so ordered.