Charles R. McCOLLUM, III, Henderson County Attorney, Appellant,

v.

Georgia Fay GARRETT, Appellee.

No. 93–SC–083–DG.

Supreme Court of Kentucky.

April 21, 1994.

As Modified on Denial of Rehearing Sept. 1, 1994.

W. Kenneth Nevitt, C. Thomas Hectus, R. Thaddeus Keal, Williams & Wagoner, Edward H. Stopher, Boehl Stopher & Graves, Louisville, for appellant.

Jeanie Owen Miller, Owensboro, for appellee.

Michael E. Conliffe, Paul B. Whitty, Louisville, for amicus curiae, Kentucky County Attys. Ass'n.

D. Brent Irvin, G. Dennis Howard, Asst. Atty. Gen., Frankfort, Thomas J. Smith, III, Ky. Com. Atty's. Ass'n, Sp. Asst. Atty. Gen., Richmond, KY, for amicus curiae, Chris Gorman, Atty. Gen. and Ky. Com. Atty's. Ass'n.

LAMBERT, Justice.

■ This Court granted discretionary review to consider the extent to which a public prosecutor shall have immunity from civil liability for malicious prosecution.[1] A separate question which must first be addressed is whether the complaint filed by appellee, Georgia Fay Garrett, sufficiently stated an individual, as opposed to an official capacity, claim against appellant, Charles R. McCollum, III. As this case was resolved by summary judgment in the trial court, the relevant testimony contained in Garrett's affidavit must be taken as true.[2]

This claim for relief arose out of the following events: Two female prisoners were being escorted to a court appearance. In the courthouse yard, the prisoners were approached by a woman and a bearded man who hugged and kissed them and thereby transferred pills from their teeth to the prisoners. This act was witnessed by two women who reported the occurrence to Detective Cottingham and County Attorney McCollum. On receiving this information and suspecting a violation of the law with respect to promoting contraband, McCollum went with the two women to the courthouse yard in an effort to determine who had committed the acts. In the vicinity, McCollum found a cigarette case which he took to the courtroom. He inquired of those assembled to whom the cigarette

case belonged and Tracy Griffin identified it as hers. McCollum then asked Ms. Griffin whether she had seen who had hugged and kissed the prisoners and she replied that the man's name was Blake and that the woman was Fay Garrett. In the courtroom, McCollum then called out the name of Fay Garrett and she responded.

What transpired thereafter is disputed. According to Garrett, she and McCollum went to the sheriff's office together. On arrival, Tracy Griffin, the eyewitness, immediately stated to McCollum, "She's not the one." Ms. Griffin then repeated this remark and was told by McCollum to sit down and shut her mouth. After further inquiring as to Garrett's identity and the identity of the man known only as Blake, McCollum left the sheriff's office and instructed Garrett to go into a side room in the sheriff's office and sit down. While in this room, Garrett claims she was rudely questioned by Detective Cottingham, and a considerable time later, Garrett's attorney, Bob Bowers, arrived. After Garrett had been fingerprinted and photographed, McCollum returned and asked Garrett if she had kissed her sister, one of the prisoners. When she responded that she had not, after a brief time out of the room, McCollum returned and said, "I'm sorry. I know you're not guilty." When Garrett expressed the assumption that she was not being arrested, McCollum explained, "I have to rush this because I had to stop the judge in the hallway as he was leaving and get the warrant signed." Other statements are attributed to McCollum which indicate that he knew Garrett was not the person who had passed the pills to the prisoners, but was causing her arrest upon his belief that she was protecting some other person.

As earlier indicated, McCollum's version of the facts differs substantially. He has stated

---

1. The elements of a civil action for malicious prosecution are set forth in *Raine v. Drasin*, Ky., 621 S.W.2d 895, 899 (1981). The distinction between malicious prosecution and "wrongful use of civil proceedings" is noted in *Prewitt v. Sexton*, Ky., 777 S.W.2d 891, 893 (1989).

2. On motion for summary judgment, when the affidavits of the parties are in conflict, for the purpose of ruling on the motion, the testimony of the party against whom the motion is made must

be accepted. If, and only if, the record, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," shall summary judgment be rendered. CR 56.03. *Goldsmith v. Allied Bldg. Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992); *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

**532**

that immediately after Garrett was identified by Griffin as one of the persons who had passed pills to the prisoners, he instructed his secretary to prepare a criminal complaint and arrest warrant for Garrett. Not until after the warrant had been signed by a judge commanding Garrett's arrest did he hear Tracy Griffin's statement that Fay Garrett was not the one who had committed the act.

From the foregoing, it is evident that there is a factual dispute as to whether McCollum procured Garrett's arrest after having been told he had the wrong person by the only person who had earlier named Garrett.

## I.

■ Prior to reaching the immunity question, it is necessary to address McCollum's contention that Garrett's complaint is fatally defective for failing to assert a claim against him in his individual capacity. He contends that the claim is against him as an official of Henderson County and as such, he is entitled to the sovereign immunity of the county. *See Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407 (1967), which held that Jefferson County, the Jefferson County Board of Education, and the Jefferson County Playground and Recreation Board were protected by the doctrine of sovereign immunity from their tortious acts.

For this contention, McCollum relies upon the failure of the complaint to specify individual capacity and its use of his official title in the caption and in paragraph 2. Without such specificity, he contends the claim should be construed as being against him in his official capacity, resulting in immunity.

In the caption McCollum is referred to as "Charles R. McCollum, III, Henderson County Attorney," and in paragraph 2, it is alleged that he is and was at all relevant times Henderson County Attorney. Otherwise, references to him in the complaint identify him only as defendant or defendant McCollum. In the *ad damnum* clause, judgment is sought only against "the defendants."[3] From the foregoing, it is clear that Garrett failed to expressly state whether her

claim was against McCollum in his individual or official capacity.

McCollum relies on this Court's recent decision in *Calvert Invest., Inc. v. Louisville & Jefferson County Metro. Sewer Dist.*, Ky., 805 S.W.2d 133 (1991), and our holding that a claim for personal liability had not been stated against the MSD board members. We said, *inter alia:*

> We are persuaded by the failure to specify individual capacity in the heading, the lack of specificity in the body, and the failure to seek judgment against such individuals in the concluding demand, that the Complaint fails to state a separate cause of action for personal liability against any particular individual.

*Id.* at 139. Standing alone, the foregoing would appear to support McCollum's contention, but when read in context, the conclusion is otherwise. In *Calvert*, the claim was against the Louisville & Jefferson County Metropolitan Sewer District and its board members, together with the Louisville & Jefferson County Board of Health and its director of division of environmental health, as well as the Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet, and its secretary. The *ad damnum* clause sought recovery from MSD, the Board of Health and the Cabinet, but did not mention the individuals. We concluded that the *Calvert* claim was, in reality, against the governmental entities and that failure to specify claims against the individuals resulted in the absence of any such claims. An earlier decision, *Morgan v. O'Neil*, Ky., 652 S.W.2d 83 (1983), reached a draconian result, but acknowledged that CR 8.01 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A proper approach is found in *Smith v. Isaacs*, Ky., 777 S.W.2d 912 (1989), in which we held the complaint sufficient to state a claim against the defendant for his individual negligence despite a possible construction that the allegations merely sought to pierce the corporate veil. We quoted from 6 Bertelsman and Philipps, *Kentucky Practice*,

**3.** In addition to appellant McCollum, the complaint also named "Larry Cottingham, Henderson County Deputy Sheriff" as a party defendant. As to Deputy Sheriff Cottingham, the Court of Appeals affirmed the trial court's dismissal and further review was not sought.

Rules of Civil Procedure, and its discussion of the function of notice pleadings and concluded that

> We no longer approach pleadings searching for a flaw, a technicality upon which to strike down a claim or defense, as was formerly the case at common law. Whereas the old common law demur searched the pleadings for a reason to dismiss, now a Motion to Dismiss is directed at the substance of the pleading. (Citation omitted.)

*Smith v. Isaacs,* 777 S.W.2d at 915. We have considered the federal authorities cited by the parties, but decline to follow what appears to be the more rigorous requirements of *Lovelace v. O'Hara,* 985 F.2d 847 (6th Cir.1993).

In our view, this issue should be resolved by a commonsense reading of the complaint and application of the Rules of Civil Procedure. While disclosure of McCollum's official position in the caption and in paragraph 2 creates a measure of uncertainty, the complaint otherwise states a straightforward claim against McCollum based upon his individual actions. Nowhere is there any allegation that Henderson County or its fiscal court is liable for damages. The relevant allegations of misconduct are directed at McCollum and Cottingham.[4] CR 8.06 requires that "All pleadings shall be so construed as to do substantial justice." This rule, sometimes called a "liberal construction" rule, requires that a pleading be judged according to its substance rather than its label or form. To construe this pleading as a claim against the defendants in their official capacity would result in the claim being barred. To construe it as an individual capacity claim permits the litigation to proceed toward the merits, a goal we have expressly embraced in other contexts. *Ready v. Jamison,* Ky., 705 S.W.2d 479 (1986), *Crossley v.*

*Anheuser–Busch, Inc.,* Ky., 747 S.W.2d 600 (1988).

Our examination of the record reveals no misleading of or prejudice to McCollum. We note that he timely and properly filed an answer to the complaint and did not move pursuant to CR 12.05 for a more definite statement, an approved method for clarifying vague or ambiguous pleadings. *Smith v. Isaacs, supra.* Accordingly, we affirm that portion of the opinion of the Court of Appeals which reversed the trial court's dismissal on grounds of sovereign immunity.

## II.

In addition, McCollum claims absolute immunity by virtue of his status as a public prosecutor. The Court of Appeals rejected this claim holding

> ... that in order for a prosecutor to be immune from civil liability for malicious prosecution, he must act within the scope of his duty, which includes performing his duties in good faith. Stated differently, a prosecutor is not immune from liability if a jury finds he initiated or continued criminal proceedings with an improper motive. If, however, the prosecutor has simply made a mistake in judgment by initiating or continuing the action, he will be immune.

By this holding, the Court of Appeals reversed the trial court's finding that McCollum was at all times acting within the scope of his official duties and was thereby entitled to immunity. In sum, the circuit court made a factual determination, despite the evidentiary dispute, that McCollum acted only within the scope of his official duties, and the Court of Appeals regarded immunity as available only if McCollum performed his duties in good faith and without an improper

---

**4.** In part, the complaint is as follows:

(4) That on the 28th day of March, 1990, the Plaintiff was maliciously and wrongfully and without probable cause accused and charged with committing a criminal act to wit: Promoting Contraband in violation of KRS 520.-060 by warrant signed by the defendant Larry Cottingham.

(5) That the defendants Charles R. McCollum and Larry Cottingham knowingly had issued a warrant for the Plaintiff's arrest accus-

ing her of acts that the defendant McCollum knew Plaintiff was not guilty of and so admitted to the Plaintiff and Plaintiff's legal counsel at that time.

(6) That the defendant McCollum after acknowledging Plaintiff's innocence of the criminal charge, refused to have the warrant quashed and the Plaintiff was subsequently arrested, fingerprinted, photographed, taken to jail, and wrongfully detained.

motive. For reasons which follow, we disagree with both courts below.

■ On the question of prosecutorial immunity for malicious prosecution, Kentucky law is well expressed in *Dugger v. Off 2nd, Inc.*, Ky.App., 612 S.W.2d 756 (1981), wherein the Court of Appeals rejected a prosecutor's absolute immunity claim. Dugger was wrongfully arrested pursuant to a warrant charging him with disorderly conduct. He alleged that the prosecutor signed the judge's name to the warrant and that the prosecutor's actions constituted gross negligence, wantonness, abuse of process and collusion since Dugger's wife was then being represented in divorce litigation by the prosecutor's law partner. The court correctly recognized that a public prosecutor must have immunity when he is acting within the scope of his authority for without it, the prosecutorial function would suffer. Nevertheless, the court examined the applicable constitutional and statutory provisions and concluded that as the prosecutor had no lawful authority to sign the name of a judge to an arrest warrant, he was outside the scope of his authority and without immunity. Throughout the *Dugger* opinion, one encounters the concept of "scope of prosecutorial duties," or words to that effect, as defining the availability of prosecutorial immunity. The opinion is clear that so long as a prosecutor acts within the scope of the duties imposed by law, quasi-judicial immunity is available, but otherwise it is not.[5]

A recent decision of the Supreme Court of the United States, *Buckley v. Fitzsimmons*, 509 U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), is in accord with *Dugger*. Relying on its recent decisions in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1992), the Supreme Court recognized that certain actions of a prosecutor were necessarily preliminary to the initiation of a prosecution, but were nonetheless protected by absolute immunity. Such acts were said to include the professional evaluation of evidence assembled and appropriate preparation for its presentation at trial or to a Grand Jury. On the other hand, *Buckley* is clear that absolute immunity does not follow a prosecutor in all of his actions. On those occasions when a prosecutor functions as an administrator or investigator, prosecutorial immunity is limited to qualified immunity.[6] Distinguishing between investigative and prosecutorial functions, the Court said

> The prosecutors do not contend that they had proper cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

*Buckley*, —— U.S. at ——, 113 S.Ct. at 2616. While *Buckley* is somewhat more explicit

---

5. The Court in *Dugger v. Off 2nd, Inc.*, Ky.App., 612 S.W.2d 756 (1981), borrowed the concept of quasi-judicial immunity and properly applied it to prosecutors acting within the scope of their prosecutorial duties. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and *Dixon v. Cooper*, 109 Ky. 29, 58 S.W. 437 (1900), and numerous other decisions reiterate the absolute immunity of judges acting within their jurisdiction.

6. "Qualified immunity" was described in *Buckley v. Fitzsimmons*, 509 U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), as follows:

> ... government officials are not subject to damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Citation omitted.) In most cases, qualified immunity is sufficient

to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."

—— U.S. at ——, 113 S.Ct. at 2613. There is a close analogy between malicious prosecution claims to which qualified immunity applies and defamation claims in which actual malice must be proven. Such cases generally require that the defamatory statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Defamation cases requiring a showing of actual malice were extensively reviewed in *Warford v. Lexington Herald–Leader Co.*, Ky., 789 S.W.2d 758 (1990), *cert. denied*, 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991). The point is a prosecutor possessing qualified immunity may not be held liable for a mistake or negligence. There must be a showing of knowing misconduct or reckless disregard.

than *Dugger*, the result is the same. A prosecutor acting as such and in accordance with the duties of office as defined by Kentucky law should have absolute immunity. Otherwise, only qualified immunity is available. This view is consistent, we believe, with this Court's decisions in *Mitchell v. Rippy*, 82 Ky. 516 (1885), and *Dixon v. Cooper*, 109 Ky. 29, 58 S.W. 437 (1900).

A recent decision of this Court rendered after the parties' briefs were filed is *Compton v. Romans*, Ky., 869 S.W.2d 24 (1993), wherein we granted absolute immunity to a high-ranking government official despite a jury verdict which found him guilty of knowing or reckless defamation. Our decision recognized that an official's entitlement to immunity is strictly dependent upon the statutory authority vested in the official.

> To determine the extent to which a public official shall have protection of the doctrine of absolute immunity, it is necessary to examine the lawful authority, including such discretionary authority as may reasonably be implied....

*Id.* at 27. We concluded that the General Assembly had broadly granted the State Racing Commission authority "to assure the probity of every aspect of the enterprise" and that a broader grant of authority could scarcely be conceived. As such, we upheld the absolute immunity claim with the full understanding that to do so would have the effect, on occasion, of protecting "officials in their misconduct." We concluded that this unappealing result was necessary to prevent timid, weak and vacillating performance of public duties.

 In the instant case, it appears undisputed that McCollum initially acted as an investigator by attempting to determine who had passed the suspected contraband to the prisoners. In the course of events, the parties' versions of the facts diverged. McCollum contended that when Garrett was identified, he immediately initiated prosecution of her by preparation of a complaint and arrest warrant. Garrett's version is that while the investigation was ongoing, McCollum learned that she was misidentified or at least that the witness who had named her had recanted, but he nevertheless initiated the prosecution.

Under the rule set forth in *Dugger v. Off 2nd, supra,* and *Buckley v. Fitzsimmons, supra,* and its predecessor decisions, the result is manifest.

During the time in which McCollum essentially acted as an investigator, the protection available to him was qualified immunity. Upon the commencement of prosecution and the assumption of his role as a public prosecutor, McCollum's immunity became absolute. The factual dispute appears to be whether McCollum learned that Garrett was misidentified as the offender during the investigation and prior to prosecution, but nevertheless initiated the prosecution. As Garrett's affidavit contains evidence from which a jury could believe that he did, this case must be remanded for further proceedings and trial.

We affirm the Court of Appeals and remand for further proceedings consistent herewith.

As to Part I, LEIBSON, REYNOLDS and STUMBO, JJ., concur.

PHILIP TALIAFERRO, Special Justice, also concurs and files a concurring opinion.

SPAIN, J., dissents and files a dissenting opinion in which STEPHENS, C.J., joins.

As to Part II, STEPHENS, C.J., and LEIBSON and STUMBO, JJ., concur.

PHILIP TALIAFERRO, Special Justice, dissents and files a dissenting opinion in which REYNOLDS and SPAIN, JJ., join.

TALIAFERRO, Special Justice, concurring in part and dissenting in part.

I agree with the majority's opinion that Mr. McCollum was properly sued in his individual capacity under the analysis of *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District*, Ky., 805 S.W.2d 133 (1991), and *Smith v. Isaacs*, Ky., 777 S.W.2d 921 (1989).

However, I take exception to the majority's holding that McCollum is entitled to only qualified immunity for his actions in this case. In my view, McCollum was acting within the scope of his authority as county

prosecutor after Ms. Griffin accused Fay Garrett and he therefore should be absolutely immune from common law liability. I believe that the common law precedent and public policy of Kentucky, together with the opinions of the United States Supreme Court, compel this Court to apply absolute immunity in this case. Therefore, I respectfully dissent.

In Kentucky, the roots of prosecutorial immunity are found in the absolute judicial immunity, set forth in *Dixon v. Cooper*, 109 Ky. 29, 58 S.W. 437 (1900), and reaffirmed by *Bryant v. Crossland*, 182 Ky. 556, 206 S.W. 791 (1918), and *Henry v. Wilson*, 249 Ky. 589, 61 S.W.2d 305 (1933). In *Duncan v. Brothers*, Ky., 344 S.W.2d 398 (1961), the Court of Appeals extended the scope of judicial immunity to include police court.

This Court, in a majority opinion authored by Justice Stephens, extended absolute judicial immunity to the issuance of a warrant by a deputy clerk, holding that such issuance was a "judicial function" even though the issuance of the arrest warrant was contrary to law. *City of Louisville v. Bergel*, Ky., 610 S.W.2d 292, 293 (1980).

The Court of Appeals further extended the scope of absolute immunity to the Commissioner of the Department of Economic Security when it ruled that she was entitled to absolute immunity from civil liability while she was in the exercise of a discretionary function and so long as she acted within the general scope of her authority. *Thompson v. Huecker*, Ky.App., 559 S.W.2d 488 (1977).

This case arose out of Huecker's departmental reorganization which had eliminated the job of Thompson, a merit employee. The Court reasoned that: "To impose tort liability would discourage public officers from undertaking plans to improve the efficiency of government." *Id.* at 496 and 497. The Court adopted the policy set forth by Judge Learned Hand in *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir.1949):

> [I]t has been though in the end better to leave unredressed the wrongs by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Finally, in 1993, this Court, in a majority opinion authored by Justice Lambert, *further* extended absolute immunity to the Chairman of the State Racing Commission in *Compton v. Romans*, Ky., 869 S.W.2d 24 (1993). The Court in *Compton* granted absolute immunity despite a jury verdict which found the Chairman liable for knowing or reckless defamation in the course of an investigation. As pointed out by the majority, this holding has the occasional effect of protecting "officials in their misconduct," but is the necessary price for "sound public policy." *Id.* at 27. The *Compton* opinion discussed the "lawful authority" vested in the official as support for absolute immunity:

> To determine the extent to which a public official shall have protection of the doctrine of absolute immunity, it is necessary to examine the lawful authority, including such discretionary authority as may reasonably be implied....

*Id.* at 27. The *Compton* opinion reasoned that the State Racing Commissioner had a broad grant of authority. A county attorney in Kentucky also has a broad grant of authority to cooperate in the enforcement of criminal and penal laws within his judicial circuit. KRS 15.725. The *Compton* Court also cited *McAlister & Co. v. Jenkins*, 214 Ky. 802, 284 S.W. 88 (1926). In the *McAlister* case, the Court granted absolute immunity to an official report of the Kentucky Real Estate Commission. The *Compton* Court's rationale for absolute immunity for the Chairman of the State Racing Commission is as follows:

> While we intend no comfort for those public officials who may despicably defame their fellow citizens, the public interest in the unflinching enforcement of the law must prevail over the private interest of a wronged citizen.

*Id.* at 28, citing *Tanner v. Stevenson*, 138 Ky. 578, 128 S.W. 878 (1910). Prosecutors such as McCollum, need and should also be granted absolute immunity as a matter of public policy.

It is also my opinion that it would be inconsistent with and in violation of this State's public policy to grant absolute immunity to a deputy clerk, to a report of Ken-

tucky Real Estate Commissioners, to the Commissioner of the Department of Economic Security and to the Chairman of the State Racing Commission but not to prosecutors. Since Kentucky courts grant absolute immunity in the above-mentioned cases, it must *a fortiori* grant absolute immunity to prosecutors.

The public policy behind absolute prosecutorial (and judicial) immunity is, in my view, compelling. It is essential to a prosecutor's public trust that he or she be at liberty to exercise his or her functions with independence, free from the distraction of potential liability. As the Supreme Court stated in *McAlister, supra,* and reaffirmed in *Compton, supra at 26:*

> [Absolute immunity] is a rule ... of public policy, not designed to protect the malicious official from the consequences of his wrongful act, but to protect the whole public from weak and vacillating public service by those upon whom such duties are imposed by law.

The *Restatement (Second) of Torts* § 656 (1977) has adopted this policy, as have a majority of states [1] and commentators W. Prosser and W.P. Keeton.[2] Specifically, § 656 of the *Restatement (Second) of Torts* (1977) states:

> A public prosecutor acting in his official capacity is absolutely privileged to initiate, institute or continue criminal proceedings.

Comment b to this section clarifies this language:

> The privilege stated in this Section is absolute. It protects the public prosecutor against inquiry into his motives, and from liability, even though he knows that he has *no probable cause* for the institution of the proceedings and initiates them for an altogether improper purpose.

The case of *Dugger v. Off 2nd, Inc.,* Ky. App., 612 S.W.2d 756 (1981), cited the United States Supreme Court case of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), for the proposition that a prosecutor's immunity was a "quasi-judicial immunity," available only when a prosecutor acts within the scope of his or her prosecutorial duties. The *Dugger* court held likewise: "We also hold that a prosecutor is immune from liability only to the extent that he has acted within the scope of his duties as a prosecutor." 612 S.W.2d at 755. It is clear that the prosecutor's alleged signing of a judge's name to a warrant was *outside the scope of his prosecutorial authority.*

It is equally clear that McCollum was acting *within the scope of his prosecutorial authority* after Ms. Griffin indicated to him that she had seen Fay Garrett hugging and kissing the prisoners. The trial court was correct in its finding that McCollum was acting within the scope of his official duties and was therefore entitled to absolute immunity.

McCollum's conduct unquestionably meets the *Imbler* test if being "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 955. After Ms. Garrett was accused, McCollum was functioning as an advocate for the State of Kentucky within the scope of his authority and in the exercise of a discretionary function. *Buckley v. Fitzsimmons,* 509 U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). As such, I believe his acts are entitled to absolute immunity pursuant to the analysis set forth herein. Therefore, I believe that judgment should be entered for McCollum and this case dismissed.

REYNOLDS and SPAIN, JJ., join in this opinion.

SPAIN, Justice, dissenting.

In addition to concurring with the dissenting opinion of Special Justice Taliaferro with regard to applying the doctrine of absolute immunity to the acts of County Attorney McCollum in this case, I also dissent from so much of the Majority's opinion as holds that Mr. McCollum was properly sued in his individual capacity by Appellee Garrett.

---

1. *Imbler v. Pachtman,* 424 U.S. at 421–22 n. 19, 96 S.Ct. at 991 n. 19, 47 L.Ed.2d at 138 n. 19. See also 52 AmJur2d *Malicious Prosecution* § 67 (1970).

2. W. Prosser and W.P. Keeton, *Prosser & Keeton on Torts,* § 132 at 1056–58 (5th Ed., 1984).

In my opinion, the circuit judge correctly ruled that Garrett's complaint was fatally defective for failing to assert a claim against him in his individual capacity. Since Garrett sued him only as Henderson County Attorney, he is entitled to the sovereign immunity of the county as pointed out by the Majority, citing *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407 (1967).

As the Majority opinion points out, McCollum is referred to in the caption of the complaint only as "Charles R. McCollum, III, Henderson County Attorney." Furthermore, in paragraph two it is alleged that McCollum " . . . is and was at all relevant times Henderson County Attorney." Finally, in the concluding demand of the complaint, Garrett merely states that she is seeking judgment "against the defendants" (referring to McCollum and Deputy Sheriff Larry Cottingham, whose official title was also included in the caption after his name). Nowhere in the body of the complaint does Garrett ever indicate in any way that McCollum and Cottingham were sued in their individual capacities.

In reversing the circuit court, the Court of Appeals held that the complaint was sufficient to state an individual claim against Mr. McCollum and cited in support of its holding the case of *Nix v. Norman,* 879 F.2d 429 (8th Cir.1989). It seems that this case contradicts rather than supports the holding of the Court of Appeals. In *Nix,* the caption of the complaint stated, "Laura Nix v. Bobby Norman, Arkansas Commission on Law Enforcement Standards and Training and the State of Arkansas." The court commented with respect to the capacity in which the defendant was sued:

> We have repeatedly stated that Section 1983 litigants wishing to sue government agents in both capacities should simply use the following language: "Plaintiff sues each and all defendants in both their individual and official capacities."

*Nix,* 879 F.2d at 431 (citations omitted).

*Nix* held that the plaintiff's complaint did not properly state a cause of action against the defendant in his individual capacity, stating that:

> Other than mentioning "joint and several liability" in her prayer for relief, Nix failed to indicate with the requisite clarity that she sought damages directly from Norman.

*Id.* at 431. Thus, *Nix* provides no support for the Court of Appeals decision that plaintiff stated a claim against McCollum in his individual capacity.

Our own Sixth Circuit U.S. Court of Appeals addressed a similar issue in *Wells v. Brown,* 891 F.2d 591 (1989), wherein it stated:

> Although modern pleading is less rigid than in an earlier day, (see *Conley v. Gibson,* 355 U.S. 41, 45–56, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), we have not let down all pleading barriers. It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.

*Wells,* 891 F.2d at 593 (citing *Brandon v. Holt,* 469 U.S. 464, 474, 105 S.Ct. 873, 879, 83 L.Ed.2d 878 (1985) (Burger, C.J., concurring in the judgment)). The Court also noted that "[i]t is certainly reasonable to ask that all plaintiffs, even *pro se* plaintiffs, some of whom file several appeals each year with us, alert party defendants that they may be individually responsible in damages. The trial and appellate courts should not have to guess at the nature of the claim asserted." *Wells,* 891 F.2d at 594 (citing *Clark v. National Travelers Life Ins. Co.,* 518 F.2d 1167 (6th Cir.1975)). As this Court recently stated, "there must be maintained some minimum standard in the art of pleading which must be met." *Morgan v. O'Neil,* Ky., 652 S.W.2d 83 (1983).

More recently in *Lovelace v. O'Hara,* 985 F.2d 847 (1993), the Sixth Circuit once again wrestled with the distinction between suits against persons in individual and official capacities. There the plaintiff filed an action for damages under 42 U.S.C. § 1983 against "Officer Lake [sic] O'Hara, Deputy Sheriff, Pendleton County Sheriff's Department." The district court, Judge Bertelsman, treated the complaint as being against O'Hara in his official capacity and granted summary judg-

ment to the sheriff's department. The district court also granted Lovelace's motion to amend the complaint, naming O'Hara in his individual capacity, despite the running of the one-year statute of limitations. The district court ruled that "the language of the original complaint was broad enough to give O'Hara notice that he was being sued in his individual capacity." The district court then granted O'Hara's motion for summary judgment based on qualified immunity. *Id.* at 849. On appeal, the Sixth Circuit reversed and ordered the district court to enter an order dismissing the amended complaint on the grounds that it was barred by the statute of limitations. *Id.* at 852. The court stated:

> Furthermore, the distinction between an official capacity and an individual capacity suit is significant. As the dissent in *Hill v. Shelander* noted, "an amendment in a defendant's capacity in a lawsuit under 42 U.S.C. § 1983 alters the elements of recovery and defense ... [and] require[s] major changes in pleading, discovery, trial preparation and selection and location of witnesses to testify at trial."

*Lovelace,* 985 F.2d at 850 (citing *Hill v. Shelander,* 924 F.2d 1370, 1384 (7th Cir.1991) (Coffey, J., dissenting)).

It seems to the writer that the Majority strains the doctrine of liberal construction of pleadings to the breaking point. Why should the Court of Appeals and this Court presume that the plaintiff intended to sue McCollum in his individual capacity when the drafter of the complaint had only to add the words "individually and as Henderson County Attorney" or simply "Charles R. McCollum, III, in his individual capacity"?

I would reverse the Court of Appeals and affirm the judgment of the trial court in its entirety.

STEPHENS, C.J., concurs in this dissent on the issue of individual capacity.