**Wallace R. BOLIN, Administrator and Personal Representative of the Estate of Christopher R. Bolin, Deceased, Appellant,**

v.

**Thomas Todd DAVIS (Public Administrator of the Estate of Plomer C. Wilson, Jr.), Appellee.**

No. 2006–CA–002259–MR.

Court of Appeals of Kentucky.

Oct. 31, 2008.

As Modified Jan. 23, 2009.

Discretionary Review Denied by Supreme Court June 17, 2009.

Samuel B. Carl, Louisville, KY, for appellant.

Robert T. Watson, Chris J. Gadansky, Louisville, KY, for appellee.

Before NICKELL, STUMBO, and THOMPSON, Judges.

## OPINION

NICKELL, Judge.

Wallace R. Bolin, Administrator and Personal Representative of the Estate ("the Estate") of Christopher R. Bolin ("Bolin"), appeals from an order of the Shelby Circuit Court entered October 9, 2006, granting summary judgment to Plomer Wilson, Jr.[1] ("Wilson").

The event giving rise to this wrongful death action occurred between 6:00 and 6:30 a.m. on December 29, 2001. There was an inch to an inch and a half of snow on the ground and Bolin had just left his parent's home on Rock Bridge Road in Shelbyville, Kentucky, heading for work in Bagdad, Kentucky. Bolin was familiar with Rock Bridge Road, having lived there for six years. After traveling just two miles, Bolin's 1998 Ford F–150 four-wheel-drive pickup truck skidded off the roadway as he failed to negotiate a sharp curve leading to a bridge[2] at the bottom of a steep hill, plunged into Little Jeptha Creek, submerged upside down in the icy water, and trapped him inside the vehicle. Bolin was removed from the truck and transported to a hospital where he was pronounced dead. The Estate alleges Bolin died as a result of the negligence of Wilson, the Shelby County Road Engineer,[3] whom they claim failed to erect a guardrail, speed limit signs and/or warning signs alerting drivers to the curve at the accident scene.

On November 7, 2002, the Estate filed a verified complaint against Wilson and "unknown defendants."[4] The heading of the complaint listed only Wilson's name and home address and did not specify whether he was being sued in his official capacity or as an individual. The body of the com-

---

1. Wilson died during the pendency of this appeal. The Estate moved this Court to stay the proceedings until a party could be substituted for Wilson pursuant to Kentucky Revised Statutes (KRS) 395.278 and Kentucky Rules of Civil Procedure (CR) 25.01. On September 6, 2007, this Court entered an order abating the appeal. On June 6, 2008, Bolin moved to terminate the stay and identified Wilson's substitute as Thomas Todd Davis, public administrator of Wilson's estate. This Court returned the appeal to its active docket on July 2, 2008.

2. The Estate referred to the point at which Bolin's truck slid into the water as a "bridge." However, during his deposition, Wilson testified it was more properly called a "culvert."

3. As of March 4, 2003, Shelby County switched from a county road engineer to a county road supervisor. Both positions are permitted by KRS 179.020 with the difference being the person's credentials. A county road engineer must be a "civil or highway engineer licensed in accordance with KRS Chapter 322, or a person who successfully passed an examination for county road engineer[.]" KRS 179.020(1). A county road supervisor must have at least "three (3) years' practical road building experience[,]" pass an exam and receive a "certificate of qualification[.]" KRS 179.020(2).

4. The estate abandoned its claim against the "unknown defendants" whom it described as entities responsible for planning, placing, designing and/or constructing the bridge and roadway.

plaint identified Wilson as being "a citizen and resident of Shelby County" and the "Shelby County Road Engineer" at all relevant times. After setting forth Wilson's official responsibilities as county road engineer[5] in great detail, the complaint alleged:

> "[o]n December 29, 2001, the roadway and bridge at the location of the collision was unreasonably dangerous and/or defective, and did not have guardrails, warning signs, speed limit postings, or other reasonable protections for members of the traveling public, including [Bolin], as a direct and proximate consequence of which [Bolin] and his estate sustained the injuries complained of in this action."

The complaint further alleged Wilson:

> knew or in the exercise of reasonable care should have known that the road and bridge at the location where [Bolin] died were defective and/or not in a reasonably safe condition for public travel, yet he negligently and/or in bad faith failed to perform his duties to remedy, warn, or guard against the dangers through acts or omissions of nonfeasance, misfeasance, or malfeasance.

The Estate sought damages for medical expenses; extreme mental anguish and emotional distress; severe physical and emotional pain, fear, and suffering; funeral expenses and costs of administration; and the loss of Bolin's earning power. The complaint's *ad damnum* clause requested "judgment against the Defendant" without making any reference to his personal or official capacity.

Following several depositions, Wilson moved for summary judgment on October 8, 2003, under CR 56.03 arguing no genuine issue of material fact existed. In the memorandum supporting his motion, Wilson claimed he was not sued in his individual capacity because the Estate did not use the word "individually" in the complaint. As a result, he argued he was sued only in his official capacity as county road engineer and was therefore entitled to either governmental immunity or alternatively, qualified official immunity because his action or inaction occurred within the good faith exercise of a *discretionary function* within the scope of his employment. The Estate filed a written response to the motion on January 11, 2006, arguing it had sued Wilson only in his individual capacity and damages were sought from him as a result of his negligent performance or nonperformance of a *ministerial duty*, not a discretionary function as claimed by Wilson.

The trial court heard oral argument on August 7, 2006, and thereafter took the matter under advisement. On October 9, 2006, the trial court entered an order granting judgment as a matter of law to Wilson and dismissed the claim. The order said only that there was no genuine issue of material fact and made no findings of fact.[6] It is from this order that the Estate now appeals.

## I. Was Wilson Sued in His Official Capacity or as an Individual?

■ Based upon *McCollum v. Garrett,* 880 S.W.2d 530 (Ky.1994) and *Calvert In-*

---

5. The powers and duties of county road engineers are set forth in KRS 179.070. They "[h]ave general charge of all county roads and bridges"; "[s]ee that county roads and bridges are improved and maintained" according to law; "[s]upervise the construction and maintenance of county roads and bridges"; work in concert with the fiscal court to "consider and either reject or ap-

prove plans, specifications, and estimates submitted for the erection or repair of bridges and the construction or maintenance of county roads"; and inspect roads and bridges during construction and improvement.

6. Under CR 52.01, findings of fact and conclusions of law are not required on summary judgment motions.

*vestments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District,* 805 S.W.2d 133 (Ky.1991), we conclude the Estate asserted a claim against Wilson in his individual capacity. Wilson suggests this is folly because the Estate did not identify him in his individual capacity in the complaint's heading, body or demand. While Kentucky does not require "technical forms of pleadings[,]" CR 8.05(1), it does require that all "pleadings shall be so construed as to do substantial justice." CR 8.06; *McCollum, supra,* 880 S.W.2d at 533.

In *Calvert, supra,* our Supreme Court held a complaint filed against a sewer district and its board members, a county board of health and its director, and a state government cabinet and its secretary, seeking relief solely from the sewer district, the board of health, and the state cabinet, failed "to state a separate cause of action for personal liability against any particular individual." *Calvert, supra,* 805 S.W.2d at 139. The *Calvert* complaint was fatally flawed because it did not specifically state in the heading or body that anyone was being sued in his/her individual capacity. Additionally, damages were not sought from any individual, only from the various government entities.

While the complaint in the case *sub judice* was similarly flawed, it is factually distinguishable from that discussed in *Calvert.* The verified complaint filed against Wilson did not specify whether he was being sued in his official capacity or as an individual, but unlike *Calvert,* no allegations were made against Shelby County or the Shelby County Fiscal Court and Wilson was the only entity from whom damages were sought. The cause of action may have stemmed from Wilson's allegedly negligent performance of his responsibilities as Shelby County Road Engineer, but that fact did not transform the Estate's claim into one against him in his official capacity.

In *McCollum, supra,* a prosecutor and a detective [7] were sued for malicious prosecution. The style of the case identified McCollum by name and as the "Henderson County Attorney." The body of the complaint alleged McCollum "was at all relevant times Henderson County Attorney." Throughout the remainder of the complaint, he was referred to as "defendant or defendant McCollum" and the *ad damnum* clause sought judgment only against "the defendants." Citing *Calvert, supra,* McCollum alleged he had been sued only in his official capacity and therefore was immune from suit. Our Supreme Court disagreed and urged a "commonsense reading of the complaint and application of the Rules of Civil Procedure." *McCollum, supra,* 880 S.W.2d at 533. In holding the complaint sufficiently stated a claim against McCollum in his individual capacity, the Supreme Court stated:

> the complaint otherwise states a straightforward claim against McCollum based upon his individual actions. Nowhere is there any allegation that Henderson County or its fiscal court is liable for damages. The relevant allegations of misconduct are directed at McCollum[.]

*Id.,* at 533. The same can be said of the Estate's complaint against Wilson in this appeal.

■ The purpose of a complaint is to give notice. CR 8.01(1) requires a complaint to concisely state the claim showing entitlement to relief and a demand for the relief to which the plaintiff believes he/she is entitled. As mentioned in *McCollum, supra,* 880 S.W.2d at 533, if Wilson was confused by the complaint and the capacity in which he was being sued, he could have

---

**7.** The claim against the detective was dismissed.

moved for a more definite statement under CR 12.05. Since no such motion was filed, and Wilson filed an answer to the complaint, we must conclude he was neither misled nor prejudiced. Therefore, we deem the Estate's complaint to have sufficiently stated a claim against Wilson in his individual capacity.

■ Had Wilson been sued in his official capacity, he could invoke official immunity. *Jones v. Cross,* 260 S.W.3d 343, 345 (Ky. 2008); *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky.2001). Having been sued in his individual capacity, however, Wilson will be cloaked in qualified official immunity only if his alleged negligence occurred during his good faith performance of a discretionary act within the scope of his employment as the county road engineer. *Estate of Clark ex rel. Mitchell v. Daviess County,* 105 S.W.3d 841 (Ky.App.2003).

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Furthermore, summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson,* 841 S.W.2d 169, 171 (Ky.1992). If such evidence is presented, the trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be

resolved in his favor." *Steelvest, supra,* 807 S.W.2d at 480 (citing *Dossett v. New York Mining and Manufacturing Co.,* 451 S.W.2d 843 (Ky.1970)).

When an order granting summary judgment is appealed, our role as a reviewing court is to determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996) (citations omitted). Our review is *de novo* and we need not "defer to the trial court since factual findings are not at issue." *Id.* Furthermore, whether Wilson was immune from suit is a question of law. *Rowan County v. Sloas,* 201 S.W.3d 469, 475 (Ky. 2006) (citing *Jefferson County Fiscal Court v. Peerce,* 132 S.W.3d 824, 825 (Ky. 2004)).

## III. Was Wilson Entitled to Qualified Official Immunity?

■ We decide today whether Wilson was entitled to summary judgment based upon qualified official immunity from an allegation of negligence due to his position as a public officer. "Traditionally, the immunity of public employees has depended upon the nature of the action or function on which liability was based. Employees were accountable for their ministerial acts performed within the scope of their employment. However, they were immune from liability for their discretionary acts performed in good faith." *Clark, supra,* 105 S.W.3d at 844 (citations omitted).

> [W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or

employee of (1) discretionary acts or function, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employees [sic] authority. An act is not necessarily discretionary just because the officer performing it has some discretion with respect to the means or method to be employed. Qualified official immunity is an affirmative defense that must be specifically pled.

Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officers [sic] duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature.

*Id.* at 845, (citing *Yanero, supra,* 65 S.W.3d at 522).

The facts of the case *sub judice* are strikingly similar to *Clark.* Both actions arose from single-vehicle accidents; both estates alleged the absence of a proper warning sign and a guardrail at a dangerous portion of a road caused the death of the drivers; and both complaints alleged the county engineer[8] was negligent in keeping the roads in reasonably safe condition for the traveling public. In *Clark,* we concluded the Daviess County Fiscal Court, engineers and road foreman were entitled to qualified official immunity because their decision not to install warning signs and a guardrail required an exercise of discretion and therefore was not a ministerial act. In reaching this conclusion, we noted the county had developed a "comprehensive scheme to evaluate and to maintain county roadways" which included road inspections and a protocol for receiving recommendations for road improvements. *Id.* Installation of a guardrail at the point of Clark's accident had been considered and rejected based on "fiscal factors and geographic considerations." *Id.* Based upon the foregoing, we deemed the decision not to install signs and a guardrail in Daviess County to be a discretionary function for which qualified official immunity was available.

By analogy, we reach the same result regarding Wilson's decision not to install a guardrail at the location where Bolin's truck left the roadway in Shelby County. Wilson testified in his deposition that he had looked at the disputed area and determined a guardrail was not needed. While he had not taken measurements, based on his experience he did not believe the fill in the area exceeded ten feet, nor that the ratio of the slope was so steep that it required installation of a guardrail or flattening of the slope. Wilson testified Shelby County had no directives regarding installation of guardrails but, in evaluating the need for them, he considered what had been done previously in formulating his current opinion.

Wilson noted there has never been a guardrail in that spot in thirty-seven years and he was unaware of anyone having slid into the creek prior to Bolin. While Wilson did not believe a guardrail over Little Jeptha Creek was necessary, he did reduce

---

8. Pursuant to KRS 179.010(2), a "county engineer" and a "county road engineer" are one and the same. The *Clark* complaint named multiple defendants including Daviess County, the Daviess County Fiscal Court, the former and the current Daviess County Judge Executives, former members of the Daviess County Fiscal Court, the former Daviess County Road Foreman, the Daviess County Road Department Sign Director, the former and the current Daviess County Engineers, and the Assistant Daviess County Engineer. All individuals were sued both in their official and individual capacities.

the speed along that stretch of road to thirty-five miles per hour and ordered the installation of signs to that effect.[9] Bolin's father testified he had no trouble driving on Rock Bridge Road and acknowledged the posted speed limit on that portion of the road was thirty-five miles per hour. Wilson testified he and his employees did not have a routine for inspecting the county roads, but reports of needed repairs were made weekly. While Shelby County had not adopted a comprehensive scheme like the one used in Daviess County, the roads were inspected and a weekly plan of work was developed.

As in *Clark*, whether Wilson correctly chose not to install a guardrail at the point where Rock Bridge Road crosses Little Jeptha Creek does not change the fact that his decision as to how to guard that area "involved an exercise of discretion" and therefore constituted a *discretionary function* for which he was cloaked in qualified official immunity rather than a ministerial act subjecting him to liability for alleged acts of negligence. *Id.* While the Estate urges us to characterize Wilson's action or inaction as a ministerial act, we are simply unconvinced Wilson was merely obeying orders or executing "a specific act arising from fixed and designated facts" in choosing to reduce the speed in that area rather than installing a guardrail and/or warning signs. *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky.1959) (quoting 43 Am. Jur., Public Officers, § 258, p. 75).

Through the affidavit of professional engineer Richard Hicks, the Estate suggested the *Manual on Uniform Traffic Control Devices for Streets and Highways*[10] dictates the types of warnings, signs and guardrail that should have been installed at the accident site. However, the manual is not part of our record and we have no evidence leading us to believe the proper method of guarding this particular stretch of road "was a matter of routine. involving no policy-making decision or significant judgment." *Clark, supra*, 105 S.W.3d at 845.

Additionally, we are unswayed by the Estate's reliance upon *Ezell v. Christian County, Ky.*, 245 F.3d 853 (6th Cir.2001) in which the Sixth Circuit Court of Appeals held summary judgment had been wrongly granted to a county road supervisor who allegedly caused a traffic fatality by improperly placing a stop sign and then allowing the sign to become overgrown with bushes. Before rendering its opinion, the federal court certified two questions to the Kentucky Supreme Court, one of them being the "liability of the county engineer in such circumstances[.]" *Id.* at 855. However, our Supreme Court declined to certify the law. *Ezell* predated rendition

---

9. In his deposition, Wilson testified the speed limit on the roadway at issue would have been fifty-five miles per hour "unless otherwise posted" and "[w]e posted it at 35." While Wilson could not verify when or where signs were posted along the road, or whether they were currently in place since signs disappear due to theft, he did confirm signs were supposed to be posted along the road. He further explained when the speed is reduced on a road "we'll post it at both ends, and in most cases we'll try to [put] one in the center in each direction, so most times you've got four signs." Wilson took responsibility for determining the posted speed limit would be thirty-five miles per hour rather than fifty-five

miles per hour on this road. His testimony about the speed and the signs was uncontradicted.

Shortly after Bolin's death, a guardrail was installed in the area. Wilson stated in his deposition the change was made at the request of an unidentified member of Bolin's family.

10. KRS 189.337(2) requires the Department of Highways to "promulgate and adopt a manual of standards and specifications" which "shall be applicable to all roads and streets under the control of the Department of Highways or any county or incorporated city." *See also* 603 KAR 5:050.

of *Yanero, supra,* by several months and *Clark* by two years and makes no mention of qualified official immunity or the distinction in discretionary functions and ministerial acts. Furthermore, in *Ezell,* the Sixth Circuit acknowledged it was resolving the appeal without guidance from the Kentucky courts.

In conclusion,

> [d]iscretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

43 Am.Jur., Public Officers, § 258, p. 75. Wilson testified installing a guardrail, depending on the location, may create a more dangerous situation than not installing one. Wilson visited the area in question and determined a reduction in speed was the best choice for guarding that portion of the roadway. Neither of Wilson's predecessors saw a need for a guardrail in that location. Based upon all the foregoing, Wilson had choices in determining the best way to guard Rock Bridge Road and made a "good faith judgment call" constituting a discretionary function. As such, he enjoyed qualified official immunity and therefore the trial court did not err in granting summary judgment in his favor.

For the foregoing reasons, the order of the Shelby Circuit Court granting summary judgment to Wilson is affirmed.

ALL CONCUR.