Gary D. DUGGER, Appellant,

v.

OFF 2ND, INC.; Sam Christie, and Police Officers Known as Bickett, Costello, and Stinnett; Roy C. Blanford, and Ford, Blanford and Stevenson, P. S. C., Appellees.

Court of Appeals of Kentucky.

Dec. 24, 1980.

As Modified on Denial of Rehearing March 6, 1981.

William Wiesman, Owensboro, for appellant.

John B. Anderson, Owensboro, for appellees, Bickett, Costello and Stinnett.

R. Scott Plain, Wilson, Wilson & Plain, Owensboro, for appellees, Roy C. Blanford and Ford, Blanford, and Stevenson, P. S. C.

Marvin P. Nunley, Owensboro, for appellees, Off 2nd, Inc. and Sam Christie.

Before COOPER, HOWERTON, and McDONALD, JJ.

HOWERTON, Judge.

Dugger appeals from an order of the Daviess Circuit Court dismissing his complaint against the appellees. Pending this appeal, he has made a settlement with the appellees, Off 2nd, Inc., and Sam Christie. The only parties and issues remaining involve the police officers, Blanford, and Blanford's law firm.

Dugger is a schoolteacher and recent president of the Daviess County Education Association. On July 3, 1979, at approximately 6:00 a. m., he was arrested pursuant to a warrant charging him with disorderly conduct. The complaint for the warrant was made by Christie, the operator of Off 2nd, Inc., an Owensboro bar, for an incident occurring on the premises. Blanford was the assistant county attorney who processed the complaint, and signed the district judge's name to the warrant. The warrant was served by police officers Bickett and Costello. Stinnett was operating the paddy wagon.

On August 1, 1979, Dugger filed a complaint against Off 2nd, Inc., Sam Christie, and the police officers. The complaint alleged wrongful arrest and false imprisonment. On January 16, 1980, Dugger amended his complaint and added Blanford and the law firm as defendants. The amended complaint alleged gross negligence and wanton conduct, a disregard for Dugger's rights, and an abuse of process. Dugger alleged that Blanford was a member of the law firm, and that the firm was representing his wife in a divorce action. The complaint also alleged that Blanford was without any authority to issue the warrant by signing the judge's name. Dugger asked for $52.00 in actual damage, $35,000.00 in special damages, and $10,000.00 in punitive damages.

Blanford and the law firm moved to dismiss the amended complaint for failure to state a cause of action. Blanford argued that he was acting in his official capacity and was therefore immune from liability. On February 14, 1980, the trial judge dismissed the complaint as to Blanford, the law firm and the police officers. The order provided, "[i]f every defendant acquitted of charges can sue the prosecutor, the prosecutorial function would be totally stifled." The judge also stated it is, "clear ... this matter was one of innocent mistaken identity.

The fact of innocence is clear as to the police officers, but Dugger has at least kicked up enough dust to cloud the issue as to Blanford and his law firm. We also hold that a prosecutor is immune from liability only to the extent that he has acted within the scope of his duties as a prosecutor. Issuing an arrest warrant is not one of those duties. We therefore affirm the dismissal of the police officers, but reverse the dismissal of Blanford and his law firm.

The warrant, as prepared by Blanford, clearly identified Gary Dennis Dugger rather than the actual offender, William Dennis Dugger. The address on the warrant was the appellant's, and the name was merely "Dennis Dugger." The arrest by the police officers involved a clear case of innocent mistaken identity as found by the trial judge.

Police officers must have some immunity from liability when they are carrying out the duties of their office. The arrest was made pursuant to a warrant which, at worst, was latently defective. In 32 Am. Jur.2d, *False Imprisonment*, § 67, we find at page 129:

> An officer is protected and justified in executing process fair on its face—that is, process that is issued by a court ... is legal in form, and contains nothing to notify or fairly apprise the officer that it is issued without authority.

*See also, Duncan v. Brothers,* Ky., 344 S.W.2d 398 (1961).

The case against Blanford and his law firm is not so clear, however. We are confronted with the questions of whether Blanford was acting within the scope of his prosecutorial duties when he signed the district judge's name to the warrant, and whether Blanford was acting in good faith.

We know of no authority for a prosecutor to issue a warrant or to sign the name of a district judge or trial commissioner. RCr 2.02, 2.04, and 2.06 provide for the issuance of warrants or summonses. Nowhere within the rules is the prosecutor given the authority to issue a warrant. KRS 69.210 sets forth the duties of county attorneys, but it makes no provision for the issuance of warrants. KRS 15.725 also lists some of the duties and responsibilities of county attorneys. Subsection (4) specifically provides that a circuit clerk may issue a criminal warrant prepared by a county attorney who certifies that there is no district judge, circuit judge or trial commissioner available.

It may be that Judge Triplett authorized Blanford to sign his name in his absence, but it appears to this Court that any such authority would not be valid. Section 28 of the Kentucky Constitution prohibits anyone in one department from exercising the powers of other departments where not specifically permitted. Section 99 of the Constitution places county attorneys under the heading "Executive Department." Judicial officers and judicial functions are provided for in §§ 109 through 142 under the heading "Judicial Department." The judiciary must not delegate such responsibilities to the executive branch. The issuance of the warrant was outside the scope of Blanford's authority, and the fact that Blanford performed an unauthorized judicial function does not cloak him with judicial immunity.

In Blanford's petition for rehearing, he argues that the issuance of a warrant by one other than a judge is nevertheless a judicial function thereby providing judicial immunity, citing *City of Louisville v. Bergel*, Ky., 610 S.W.2d 292 (1980). It was held in *Bergel* that the issuance of a warrant by a deputy police court clerk was a judicial function. The distinction is that the deputy police court clerk had specific authority to issue the warrant. KRS 26.330(1) (now repealed). *See also*, KRS 15.725(4). The prosecutor has none.

A prosecutor does enjoy and must have immunity when he is acting within the scope of his authority. *Mitchell v. Ripy*, 82 Ky. 516 (1885), and *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler*, a prosecutor's immunity was described as "quasi-judicial immunity." *Imbler* indicates, however, that the immunity is available only when the prosecutor acts within the scope of his prosecutorial duties.

The case was dismissed by an "order" following a hearing upon Blanford's motion to dismiss. Some proof was taken, however and considered by the court. The "order" may be considered as being as a summary judgment. CR 12.02. CR 56.

Blanford completed the warrant in such a manner as to cause the arrest of the appellant as opposed to the William Dennis Dugger who was known as Bill Dugger and who had appeared in the Daviess County courts on several occasions for alcohol-related offenses. There is proof in the record that Blanford went to Off 2nd, Inc., to interview Christie for the complaint and was informed that the offender was someone who was called Dennis Dugger or Bill Dugger.

Blanford argues that the dismissal should be affirmed because he testified that the district judge authorized him to sign his name, and because he testified that it was after the issuance of the warrant that he found out his law partner represented Dugger's wife in a divorce action. Although both points may have been uncontroverted at the time of the hearing, neither conclusively exonerate Blanford, and they do not support a dismissal as a matter of law.

It may be next to impossible for Dugger to prove his allegations of gross negligence, wantonness, abuse of process, and collusion within the law firm, but since Blanford is without immunity, Dugger must at least have his day in court. As our Supreme Court stated in reversing a summary judgment:

A record may reflect grave doubt that a claimant may prosecute his action to a successful conclusion, but he should be permitted to at least try. He should not be compelled to try his action on a motion for summary judgment.

*Harlow v. Harlow*, Ky., 551 S.W.2d 230, at 233 (1977).

It is not our intent to "stifle" the prosecutorial functions, but merely to make the point that according to our present Constitution, statutes and procedural rules, there is no lawful way for a prosecutor to issue an arrest warrant. Judges and clerks may devise many ways for the issuance of warrants at inconvenient times, but it may not be by permitting a prosecutor to sign the judge's name "by" the prosecutor. We doubt if there will be many acquitted defendants who will have the same basis for a cause of action against a prosecutor.

It was error for the trial court to dismiss the complaint, but if Dugger fails to present reasonable proof of his changes, a summary judgment or directed verdict may become appropriate.

The order of the trial court is affirmed as to the dismissal of the police officers but reversed and remanded as to the dismissal of Blanford and Ford, Blanford, and Stevenson, P. S. C.

All concur.