RENDERED: AUGUST 21, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2019-CA-000593-MR


MICHAEL O'CONNELL                                APPELLANT


           APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE OLU A. STEVENS, JUDGE
           ACTION NO. 18-CI-002810


CHRISTOPHER THIENEMAN                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE: Michael O'Connell, the Jefferson County Attorney, brings this interlocutory appeal from a Jefferson Circuit Court order denying his motion to dismiss the amended complaint of Christopher Thieneman. Thieneman brought suit alleging defamation in connection with public remarks made about

him by O'Connell. O'Connell contends he is entitled to sovereign, qualified official, and qualified governmental immunity from suit.

On May 1, 2018, the Jefferson County Law Library sponsored a celebration of Law Day with an outdoor event held at Jefferson Square Park in downtown Louisville. The event was held between 10:00 a.m. and 2:00 p.m. and featured a number of guest speakers using an electronic public-address system. The event was not televised but there were a few bystanders. O'Connell spoke on the topic of constitutional law. A truck parked nearby and visible from the park displayed a billboard stating "Vote Out Mike O'Connell, Louisville's Sexual Predator Protector paid for by victims of the youth explorer program" with Chris Thieneman's name listed as treasurer.

In speaking about the First Amendment, O'Connell made the following remarks about Thieneman:

> He was convicted by a jury of his peers, a conviction which was upheld by the courts of this county[;] therefore he's obviously free to speak in the manner he wants, but my office, and my prosecutors, the women in my office will not be intimidated by the speech of Mr. Thieneman. He is a sexual predator, he was convicted of trying to strangle his then-girlfriend, and the women in this community should be wary and be prepared to not come in contact with him, ever. He is a danger to this community, and to the women in this community, and each one should make sure they take every precaution they can to protect themselves from this sexual predator. There. That's my right of free speech, and my office won't be intimidated by this. And, between now and

whenever, and as long as he wants to keep that up, I'll call it exactly what it is, a sexual, uh excuse me, a domestic violence perpetrator, and an abuser of women, and he strangles women, and was convicted by a jury, and upheld by the appeals court. Thank you very much.

Appellant Brief at *2.

Thieneman filed a complaint against O'Connell in Jefferson Circuit Court, stating as his causes of action defamation *per se* and defamation. He subsequently filed an amended complaint to correct a typographical error. O'Connell filed a motion to dismiss the amended complaint, arguing that he was entitled to sovereign immunity and qualified immunity, that his speech was protected by the First Amendment, that Thieneman failed to state a claim for defamation as he failed to show actual malice, and that Thieneman failed to state a claim for damages. Discovery was stayed pending the circuit court's ruling on the motion to dismiss. O'Connell subsequently filed a supplemental memorandum of law concerning qualified immunity. Thieneman filed a response to the motion to dismiss and O'Connell filed a reply. The circuit court entered an order denying the motion to dismiss after finding the amended complaint was sufficient to state a cause of action against O'Connell. This interlocutory appeal followed.

This interlocutory appeal is permissible because "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d

-3-

883, 887 (Ky. 2009). The cloak of immunity entitles its possessor to be free "from the burdens of defending the action, not merely just an immunity from liability." *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006) (citations omitted).

O'Connell argues that he is entitled to sovereign immunity because he was sued solely in his official capacity as the Jefferson County Attorney. Thieneman's complaint designated the defendant as "Michael O'Connell Jefferson County Attorney." The complaint did not refer to O'Connell in his individual capacity.

If strictly construed, the complaint's designation of O'Connell solely in his official capacity would lead to Thieneman's claims being barred because "[t]he absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought." *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001) (citations omitted). "Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity[.]" *Id.* at 521. Prosecutors are also afforded absolute immunity "with respect to the initiation and pursuit of prosecutions[.]" *Id.* at 518 (citations omitted); *see also Jefferson County Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky. 2001), *as modified on denial of reh'g* (Feb. 21, 2002).

Yet the allegations of Thieneman's complaint are directed against O'Connell as an individual, not against the state as the real party in interest, nor against O'Connell in regard to his conduct of a prosecution. O'Connell nonetheless argues that the failure of the complaint to name him in his individual capacity is fatal to Thieneman's case. In *Edmonson County v. French*, a panel of this Court addressed a similar situation in which a slip and fall complaint against the members of a fiscal court and judge executive failed to specify they were also being named in their individual capacities. 394 S.W.3d 410 (Ky. App. 2013). When the defendants invoked the doctrine of sovereign immunity, the plaintiff urged the Court to liberally construe her complaint to encompass claims against them in their individual capacities.

In resolving the issue, the *Edmonson* Court considered two different approaches. First, it reviewed *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist.*, 805 S.W.2d 133 (Ky. 1991), in which the Kentucky Supreme Court held that a claim against a state actor in his or her individual capacity must be made with specificity:

> [T]he question is whether the Complaint does in fact state a basis for personal liability and seek damages in an individual capacity. We are persuaded by the failure to specify individual capacity in the heading, the lack of specificity in the body, and the failure to seek judgment against such individuals in the concluding demand, that the Complaint fails to state a separate cause of action for personal liability against any particular individual.

*Edmonson*, 394 S.W.3d at 415 (quoting *Calvert Investments*, 805 S.W.2d at 139).

The *Edmonson* Court also noted the unpublished case of *Eblen v. Hargis*, No. 2002-CA-001478-MR, 2003 WL 21512531 (Ky. App. Jul. 3, 2003), an opinion cited by O'Connell, in which Eblen filed suit against the property valuation administrator (PVA) for raising the taxable value of his home. Relying on the holding in *Calvert Investments*, this Court upheld the dismissal of Eblen's claim for failure to state a claim against a state actor in his individual capacity, noting that the complaint only contained allegations that Hargis acted improperly in his employment as PVA. *Edmonson*, 394 S.W.3d at 414-15.

Second, *Edmonson* considered *McCollum v. Garrett*, 880 S.W.2d 530 (Ky. 1994), in which the Supreme Court adopted a broader approach. In *McCollum*, the plaintiff alleged malicious prosecution against a county attorney but did not expressly state whether the claim was against him in his individual or official capacity. *Id.* at 532. The opinion analyzed the issue as follows:

> In our view, this issue should be resolved by a commonsense reading of the complaint and application of the Rules of Civil Procedure. While disclosure of McCollum's official position in the caption and in paragraph 2 creates a measure of uncertainty, the complaint otherwise states a straightforward claim against McCollum based upon his individual actions. Nowhere is there any allegation that Henderson County or its fiscal court is liable for damages. The relevant allegations of misconduct are directed at McCollum and

Cottingham. CR[1] 8.06 requires that "All pleadings shall be so construed as to do substantial justice." This rule, sometimes called a "liberal construction" rule, requires that a pleading be judged according to its substance rather than its label or form. To construe this pleading as a claim against the defendants in their official capacity would result in the claim being barred. To construe it as an individual capacity claim permits the litigation to proceed toward the merits, a goal we have expressly embraced in other contexts. *Ready v. Jamison*, Ky., 705 S.W.2d 479 (1986), *Crossley v. Anheuser-Busch, Inc.*, Ky., 747 S.W.2d 600 (1988).

*Id.* at 533 (footnote omitted).

In deciding whether to adopt the *Calvert* or the *McCollum* approach, the *Edmonson* Court noted that the plaintiff, who was injured when she slipped and fell on some ice outside the courthouse, specifically alleged in her complaint that the fiscal court was responsible for maintaining and keeping safe the premises of the courthouse, a public building, and that the defendants failed to keep the premises in a reasonably safe condition. The plaintiff "did not single out any particular member of the fiscal court or the judge executive regarding that person's action or lack of action, as was the case in *McCollum*. And she certainly alleged that the county and the fiscal court were liable." *Edmonson*, 394 S.W.3d at 416. The Court consequently rejected the "liberal construction" rule of *McCollum* and construed the complaint strictly according to *Calvert*. *Id.*

---

[1] Kentucky Rules of Civil Procedure.

-7-

By contrast, as we have noted, the allegations of misconduct in Thieneman's complaint state a straightforward claim against O'Connell based upon his individual actions and do not allege that the County Attorney's Office is in any way liable for damages. This situation bears greater similarity to *McCollum* and accordingly Thieneman's complaint shall be construed as being brought against O'Connell in an individual, as well as a representative, capacity.

"[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522 (citation omitted). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Id*. (citations omitted). Conversely, "[a] government official is not afforded immunity from tort liability for the negligent performance of a ministerial act." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016), *as modified on denial of reh'g* (Aug. 24, 2017).

Discretionary acts are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* (citation omitted). "Discretion in the manner of the performance of an act arises when the act may be

performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010), *as corrected* (May 7, 2010) (citing *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959)). "On the other hand, ministerial acts or functions—for which there are no immunity—are those that require 'only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Id*. (quoting *Yanero*, 65 S.W.3d at 522).

Thieneman does not dispute that O'Connell's comments at the Law Day event were made within his discretionary, rather than ministerial, capacity, as his decision to speak and the content of his remarks were determined by his own will and judgment. Under these circumstances, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citation omitted). "[Q]ualified official immunity yields to proof that a defendant's actions were malicious." *Martin v. O'Daniel*, 507 S.W.3d 1, 6 (Ky. 2016), *as corrected* (Sept. 22, 2016) (emphasis original).

The elements of a defamation claim are as follows: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014), *as corrected* (Apr. 7, 2015) (citation and footnote omitted). Thus, in addition to proving each of these elements, O'Connell's qualified official immunity imposes upon Thieneman the additional burden of showing that the Law Day remarks were made, not negligently, but maliciously, *i.e.*, in bad faith.

"[I]n the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523 (citation omitted).

Thieneman argues that a claim for defamation *per se* creates a conclusive presumption of both malice and damages, in reliance on *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794-95 (Ky. 2004), *overruled by Toler*, 458 S.W.3d 276. But "[t]o the extent that *Stringer* stands for a perpetuation of

allowing the mere allegation of falsity to permit an inference of malice, it is overruled. . . . [A]ny statement in *Stringer* to the contrary notwithstanding, both malice *and* falsity must be shown for a plaintiff to overcome the qualified privilege." *Toler*, 458 S.W.3d at 287 (emphasis original).

Thieneman argues that malicious prosecution does not sound in negligence and consequently the qualified official privilege is unavailable to O'Connell. But Thieneman's complaint does not allege malicious prosecution, which is a significantly different claim from defamation. Malice is one of the elements that must be proven as part of a malicious prosecution claim and therefore in that context the "defense of qualified official immunity has little meaning and no effect." *Martin*, 507 S.W.3d at 6. By contrast, O'Connell is protected by qualified official immunity if his remarks, if defamatory, were made without malice and in good faith.

Thieneman also alleges that O'Connell has improperly prevented discovery by filing this interlocutory appeal. The record shows that Thieneman served discovery requests on O'Connell, who filed a motion to stay discovery pending the circuit court's ruling on the motion to dismiss. Thieneman did not respond to the motion to stay discovery and did not appear at the motion hour on October 8, 2018. At that motion hour, the circuit court ruled it would hold the case in abeyance for a week to allow Thieneman to respond. At the following motion

-11-

hour, on October 15, 2018, Thieneman still had not responded or appeared. The circuit court accordingly granted the motion to stay discovery. Thieneman was provided with ample opportunity to raise his argument regarding discovery and it will not be addressed here for the first time on appeal.

The concurring opinion makes a public policy argument for extending absolute prosecutorial immunity to O'Connell for his remarks, while acknowledging that this defense was not invoked by O'Connell and is not supported by our case law. In *McCollum*, the Kentucky Supreme Court discussed the scope of prosecutorial immunity in the context of *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993), observing that *Buckley* "is clear that absolute immunity does not follow a prosecutor in all of his actions." *McCollum*, 880 S.W.2d at 534.

In *Buckley*, the appellant, a criminal defendant, claimed that defamatory remarks made about him at a press conference by the prosecutor, Fitzsimmons, deprived him of the right to a fair trial by inflaming the public against him and causing the jury to deadlock rather than acquit him. As the concurrence has rightly noted, the claims in *Buckley* were made pursuant to 42 U.S.C.[2] §1983 and, consequently, in order to claim prosecutorial immunity, Fitzsimmons would have had to show it was well-established prior to the

---

[2] United States Code.

enactment of §1983 in 1871. The concurring opinion also notes that whereas the United States Supreme Court may not establish immunities from §1983 actions on the basis of public policy, state courts are not subject to the same constraints in addressing state law claims.

Presumably, the *McCollum* Court was fully aware of this distinction yet nonetheless declined to extend prosecutorial immunity on public policy grounds. Instead, the *McCollum* Court approved the functional approach of *Buckley* in assessing the availability of prosecutorial immunity as entirely congruent with *Dugger v. Off 2nd, Inc.*, 612 S.W.2d 756 (Ky. App. 1980), which held "that so long as a prosecutor acts within the scope of the duties imposed by law, quasi-judicial immunity is available, but otherwise it is not." *McCollum*, 880 S.W.2d at 534 (footnote omitted). In assessing the availability of immunity to Fitzsimmons, the *Buckley* Court stated:

> Fitzsimmons does not suggest that in 1871 there existed a common-law immunity for a prosecutor's, or attorney's, out-of-court statement to the press. . . . Indeed, while prosecutors, like all attorneys, were entitled to absolute immunity from defamation liability for statements made during the course of judicial proceedings and relevant to them, . . . most statements made out of court received only good-faith immunity. The common-law rule was that [t]he speech of a counsel is privileged by the occasion on which it is spoken . . . .
>
> Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. At the press conference, Fitzsimmons did not

-13-

act in his role as advocate for the State[.] The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions. Statements to the press may be an integral part of a prosecutor's job, . . . and they may serve a vital public function. But in these respects a prosecutor is in no different position than other executive officials who deal with the press, and, . . . qualified immunity is the norm for them.

*Buckley*, 509 U.S. at 277-78, 113 S. Ct. at 2617-18 (citations and internal quotation marks omitted).

The *Buckley* Court reiterated that "'[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. . . .' Even if policy considerations allowed us to carve out new absolute immunities to liability for constitutional wrongs under § 1983, we see little reason to suppose that qualified immunity . . . would fail to provide sufficient protection in the present context." *Id*., 509 U.S. at 278, 113 S. Ct. at 2618 (citations and footnote omitted).

O'Connell, like other officials, is entitled only to the protections of qualified official immunity for his public statements which, arguably, are even less related to his function as County Attorney than the comments made by Fitzsimmons.

Because O'Connell is not entitled to absolute immunity from suit, the Jefferson Circuit Court's order denying the motion to dismiss is affirmed. The

-14-

case is remanded for further proceedings to determine whether O'Connell is entitled to qualified official immunity, which requires a finding, established by direct or circumstantial evidence, *Yanero*, 65 S.W.3d at 523, that he acted without malice in making the allegedly defamatory statements about Thieneman.

The Jefferson Circuit Court's order denying the motion to dismiss is affirmed and the case is remanded for further proceedings in accordance with this opinion.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

MAZE, JUDGE, CONCURS AND FILES SEPARATE OPINION.

MAZE, JUDGE, CONCURRING: I agree with the reasoning and result of the majority opinion. However, I write separately to express my opinion that Kentucky should extend absolute prosecutorial immunity to the claims at issue in this case. Extending such immunity would allow prosecutors to keep the public informed about pending and completed prosecutions without fear of defending actions for defamation.

As an initial matter, I reluctantly agree with the majority that Thieneman's complaint properly states a claim against O'Connell in both his individual and his official capacities. When sued in his representative capacity, O'Connell is entitled to the same immunity as the Office of the County Attorney itself would be. *Yanero*, 65 S.W.3d at 521. The County Attorney, as an agency of

-15-

a political subdivision of the state, is entitled to governmental immunity from tort liability when performing governmental functions. *Id.* at 519. But when sued in his individual capacity, O'Connell's immunity is only qualified. *Id.* at 522.

The first question in this case, as addressed by the majority opinion, is whether Thieneman's complaint states a claim against O'Connell in his official or in his individual capacity. Based on the analysis in *McCollum*, *supra*, and *Edmonson*, *supra*, I agree that the complaint states a basis for personal liability and seeks damages in an individual capacity. Thieneman's complaint is very ambiguous concerning the claims asserted against O'Connell individually. The complaint only names O'Connell in his capacity as Jefferson County Attorney regarding actions taken performing the duties connected with that office. Thieneman also had the opportunity to amend his complaint to state a claim against O'Connell specifically in his individual capacity. Thieneman failed to do so.

Nevertheless, the complaint is substantively indistinguishable from the claims brought against the County Attorney in *McCollum*. As in that case, Thieneman's complaint only references O'Connell and seeks damages only against him. CR 8.06 requires this Court to construe the complaint liberally according to its substance rather than its label or form. To construe this pleading as a claim against O'Connell solely in his official capacity would result in the claim being barred. While the rule does not require us to re-write the pleading, based on

*McCollum* I must agree that the complaint sufficiently states claims against O'Connell in his individual capacity.

Since this is an interlocutory appeal, the only questions properly presented involve the denial of a claim of absolute immunity. *Prater*, 292 S.W.3d at 886. At this juncture, Thieneman's allegations of malice are sufficient to preclude a finding that O'Connell is entitled to qualified immunity in his individual capacity. *Martin*, 507 S.W.3d at 5. Likewise, any arguments concerning privilege or whether his statements are defamatory are beyond the scope of this interlocutory appeal. This is a battle which will have to be fought at a later time.

However, this is not the end of our inquiry. Although O'Connell's official immunity is only qualified, absolute immunity is also afforded to certain governmental actors. *Yanero*, 65 S.W.3d at 518. The immunity does not depend upon whether the official is sued in his or her representative or individual capacity, but upon the nature of the duties performed. Among other duties, the County Attorney is responsible for the prosecution of all offenses subject to the jurisdiction of the District Court. Kentucky Revised Statutes (KRS) 15.725(2). When acting in this role, the County Attorney is entitled to absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 422-23, 96 S. Ct. 984, 991, 47 L. Ed. 2d 128 (1976).

On the other hand, absolute immunity does not apply when the County Attorney is functioning as an administrator or an investigator. *McCollum*, 880 S.W.2d at 534 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)). Likewise, the County Attorney is not entitled to absolute immunity when he provides legal advice to or represents the interests of a consolidated local government. KRS 69.210. In those circumstances, the prosecutor's immunity is limited to qualified immunity.

In *Buckley v. Fitzsimmons*, the United States Supreme Court held that a prosecutor's comments to the media have no functional tie to the judicial process. 509 U.S. at 277, 113 S. Ct. at 2618. While statements to the press may be an integral part of a prosecutor's job, such functions are no different than other administrative functions performed by other executive officials. Consequently, the prosecutor is limited to qualified immunity for such statements. *Id.*, 509 U.S. at 278, 113 S. Ct. at 2618.

However, the claims in *Buckley* were brought under 42 U.S.C. §1983. Consequently, any immunities were limited to those in existence in 1871, when the Civil Rights Act was enacted. At common law, there was no recognized immunity for a prosecutor's or an attorney's out-of-court statements to the press. *Id*., 509 U.S. at 277, 113 S. Ct. at 2617. The Supreme Court determined that it did not "have a license to establish immunities from § 1983 actions in the interests of what

-18-

we judge to be sound public policy." *Id.*, 509 U.S. at 278, 113 S. Ct. at 2618 (citation omitted). On the other hand, state courts, ruling on state-law claims such as defamation, are not subject to this limitation.

Most notably, Indiana has adopted a rule providing that a prosecutor's statements to the press regarding a pending case, if made within the scope of his authority, are absolutely immune. *Foster v. Pearcy*, 270 Ind. 533, 538, 387 N.E.2d 446, 449 (1979). *See also Sims v. Barnes*, 689 N.E.2d 734, 737 (Ind. Ct. App. 1997). A district of the Illinois Appellate Court adopted this rule in *Bianchi v. McQueen*, 58 N.E.3d 680, 701-02 (Ill. App. Ct. 2016). Connecticut has applied this rule to public statements made by the state Attorney General. *Hultman v. Blumenthal*, 67 Conn. App. 613, 623, 787 A.2d 666, 674 (2002). Similarly, Vermont, Pennsylvania, and Michigan extend their statutory absolute immunity to district attorneys' public statements about a prosecution. *See O'Connor v. Donovan*, 191 Vt. 412, 424, 48 A.3d 584, 592 (2012), *Pickering v. Sacavage*, 164 Pa. Cmwlth. 117, 126, 642 A.2d 555, 559 (1994), and *Bischoff v. Calhoun Cty. Prosecutor*, 173 Mich. App. 802, 806, 434 N.W.2d 249, 251 (1988).

"The rationale for absolute immunity for the performance of legislative, judicial and prosecutorial functions is not to protect those individuals from liability for their own unjustifiable conduct, but to protect their offices against the deterrent effect of a threat of suit alleging improper motives where there has

been no more than a mistake or a disagreement on the part of the complaining party with the decision made." *Yanero*, 65 S.W.3d at 518 (citation omitted). I believe that this reasoning is equally applicable to the case at hand. Prosecutors have a duty to inform the public as to their investigative, administrative, and prosecutorial activities. *Foster*, 387 N.E.2d at 449. Statements to the media and to the public at large further this significant role.

To be clear, I do not believe that every public statement by a prosecutor is subject to absolute immunity. However, prosecutors are frequently called upon to speak on matters relating to pending or completed prosecutions. During the pendency of a prosecution or trial, a court may reasonably restrict the parties from making public statements which may prejudice the outcome. But in the absence of such a restriction or once the prosecution is completed, a prosecutor should be entitled to make public statements concerning the facts of the prosecution and conviction. Such statements are reasonably attendant to the prosecutorial function. To hold otherwise, in my opinion, would have a devastating and chilling effect on public officials.

In this case, Thieneman's complaint alleges that O'Connell defamed him by referencing his prior prosecution and conviction for second-degree wanton endangerment and by stating that he was a danger to the community as a result. O'Connell spoke about his office's prior prosecution of Thieneman for assault and

-20-

conviction for second-degree wanton endangerment. When speaking about this prosecution, O'Connell referred to the actions and position of the County Attorney's Office. He specifically referred to "my office, and my prosecutors, [and] the women in my office . . . ."

I concede that O'Connell conflated the nature of Thieneman's offenses with the allegations posted on the billboard – he twice referred to Thieneman as a "sexual predator." This was clearly an inaccurate statement of the facts surrounding the conviction. But O'Connell specifically noted the facts supporting the conviction and he corrected his prior mischaracterization of Thieneman's actions near the close of his remarks. Although I believe that O'Connell's remarks were ill-considered, I would nonetheless hold that they were subject to absolute prosecutorial immunity.

In context, I would find that O'Connell was addressing the official position of his office regarding a completed prosecution. While that prosecution was completed, the County Attorney is entitled to publicly address the fact of a conviction. His office prosecuted Thieneman for attempting to choke his then-girlfriend. That prosecution resulted in a conviction which was upheld on appeal.

Making public statements about the result of the County Attorney's prosecution of particular individuals is reasonably within the scope of O'Connell's prosecutorial role. It also furthers the purpose of affording immunity to such

-21-

actions – protecting a prosecutor from liability for engaging in the necessary functions of the prosecutorial role. Furthermore, O'Connell was entitled to express his opinion about Thieneman to the extent that it was based on the disclosed and accurate facts surrounding the prosecution and conviction. *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989).

Nevertheless, I must recognize that Kentucky has not adopted absolute immunity for prosecutors to this degree. While I believe that there are compelling public policy reasons to do so, it is not the role of this Court to adopt such a rule for the first time. I must also recognize that O'Connell has not asked this Court to do so. Thus, while I believe that the claims against O'Connell should be barred by absolute immunity, I must agree with the majority that O'Connell only has qualified immunity from defamation claims brought against him in his individual capacity. Therefore, I concur in the majority's decision to affirm the denial of his motion to dismiss.

BRIEFS FOR APPELLANT:

Michael J. O'Connell
Kristie B. Walker
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Kristie B. Walker
Louisville, Kentucky

BRIEF FOR APPELLEE:

Thomas A. McAdam, III
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Mary E. Eade
Louisville, Kentucky