RENDERED:  JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0273-MR

JAMES D. JOHNSON A/K/A
J.D. JOHNSON A/K/A
JAMES DAVID JOHNSON                                                    APPELLANT


APPEAL FROM JOHNSON CIRCUIT COURT
v.         HONORABLE HOWARD KEITH HALL, SPECIAL JUDGE
ACTION NO. 22-CI-00279


DEUTSCHE BANK NATIONAL
TRUST COMPANY; BAPTIST
HEALTHCARE SYSTEM INC. D/B/A
BAP; COMMONWEALTH OF
KENTUCKY, DEPARTMENT OF
REVENUE; FIRST GUARANTY
BANK; JEFF CONN; NANCY CONN;
AND THE UNITED STATES OF
AMERICA                                                                APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CETRULO, JUDGE:  Appellant James D. Johnson ("Johnson") appeals the

Johnson Circuit Court January 2025 Judgment and Order of Sale in a foreclosure

action. Finding error, we vacate the circuit court's order and remand for additional proceedings.

## FACTS & BACKGROUND

A trial court is specifically directed not to resolve any issues of fact at the summary judgment stage. "The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citation omitted). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). Here, the order on appeal, the January 2025 Judgment and Order of Sale, granted a motion for summary judgment against Johnson. Thus, we shall recite the facts in a light most favorable to Johnson, a task the circuit court should have also undertaken.

In July 1998, Johnson purchased the Paintsville Property ("Property") in question and has used it as his primary residence since that time. In December 2004, Johnson refinanced, obtained a loan, and signed a note promising to repay the lending bank $266,000 (plus 6.65% interest). Johnson executed a new mortgage on the Property to secure the note. In 2014, after suffering a familial hardship, Johnson qualified for a mortgage modification under the Federal Making

Homes Affordable Act ("HAMA"). In May/June of that year, the lending bank agreed to modify the 2004 mortgage and note ("2014 Modification Agreement").

The 2014 Modification Agreement waived all unpaid late charges and stated the new principal balance was $274,612.[1] This new principal balance was broken into two parts: a *Present* Principal and a *Deferred* Principal.

The Present Principal – $135,650 – was interest bearing at 2%, and Johnson's first new monthly payment was due on August 1, 2014.

The Deferred Principal – $138,962 – was non-interest bearing. A portion of that Deferred Principal – $129,262 ("Reduction Amount") – was potentially eligible for forgiveness. Specifically, the lender would forgive the Reduction Amount in thirds on the first, second, and third anniversaries of May 1, 2014, provided Johnson was not in default of three full monthly payments.

Additionally, this 2014 Modification Agreement included a balloon payment of approximately $88,000 upon the loan's maturity date in 2035.

In November 2022, Deutsche Bank National Trust Company ("Deutsche Bank"), having received the mortgage through assignment, initiated a foreclosure action in Johnson Circuit Court. In its complaint, Deutsche Bank alleged Johnson had not made payments in accordance with the terms and conditions of the loan, and despite demand and acceleration, the mortgage balance

---

[1] For simplicity, we rounded all values in this Opinion to the nearest dollar.

remained unpaid.  The complaint did not state *when* Johnson defaulted.  The complaint alleged Johnson owed a Present Principal of $117,356 (plus 2% interest on that balance accrued since September 1, 2021) and a Deferred Principal of $113,466.

Johnson answered and counterclaimed.  He asserted he was current with the mortgage payments and in compliance with the 2014 Modification Agreement until the Mortgage Holder[2] prevented his payments.  The complaint named numerous other lienholders; the only lienholders relevant here are Jeff Conn and Nancy Conn (together, the "Conns").  Johnson stated when the Conns initiated a separate action (and requested a lien against the property), the Mortgage Holder stopped its automatic withdrawals from his bank account and prevented him from manually paying online during the pendency of the Conns' action.[3]  Therefore, Johnson argued, he "was placed in a position of Impossibility of Performance at the hand of the [Mortgage Holder]."

This action continued, and during discovery, Johnson produced a series of letters and an email from his legal counsel to the Mortgage Holder.  The

---

[2] Johnson's mortgage passed through numerous secondary market mortgage servicing companies.  For clarity, we shall refer to those institutions uniformly as the Mortgage Holder.

[3] The record on appeal includes proof the Conns filed a notice of a judgment lien in the Johnson County Clerk's Office in February 2014, but it is unclear if this is the matter to which Johnson refers.  On appeal, the Mortgage Holder asserts "[t]here is no evidence from Mr. Johnson that the [Conns'] lawsuit was any issue or had any impact on Mr. Johnson's loan."

first letter – dated July 1, 2015 – stated Johnson was making timely payments, those payments were being automatically deducted from his checking account, and he was compliant with the 2014 Modification Agreement. However, according to the letter, the June 2015 payment was not automatically deducted. When Johnson attempted to make a manual payment online, he was denied access to his account and instructed to call a particular number. When Johnson called that number, he only heard a busy signal. When he called the Mortgage Holder's general line, he was referred to the number that only gave a busy signal. The letter stated Johnson "has exhausted all avenues he knows to continue to keep his payments current[,]" and sought direction on how to continue his payments.

Another letter – dated July 9, 2015 – from the Mortgage Holder to Johnson stated his systematic withdrawals were being discontinued "as the loan was past due." The letter provided no further information.

On July 24, 2015, Johnson's legal counsel emailed the Mortgage Holder inquiring about its July 9 letter. Johnson's legal counsel stated, "[Johnson] was current until [the Mortgage Holder] stopped the automatic withdrawals." It appears the Mortgage Holder did not respond to that email or any of the three subsequent letters (dated July 24, August 21, and December 9) sent by Johnson's legal counsel to the Mortgage Holder. These follow-up letters continued to state

Johnson was "ready and willing to make the mortgage payment[,]" and Johnson desired "to keep the payments current[.]"

In June 2024, the Mortgage Holder moved for summary judgment and an order of sale arguing (inaccurately) that Johnson "did not raise the defense of . . . impossibility[.]" The motion stated Johnson asserted the Mortgage Holder "refused to accept payments" but stated this assertion does not present an issue of material fact. The motion admitted that Johnson paid during the first year after the 2014 Modification Agreement, and hence, $43,087 of the Deferred Principal Balance was forgiven in May 2015. However, the motion asserted "no payments were made by Johnson in June, July or August 2015[.]"

To establish default, the Mortgage Holder attached various exhibits including, relevantly, late payment letters from the Mortgage Holder to Johnson dated March 2019, October 2021, and December 2022, and an affidavit from a Mortgage Holder representative ("Exhibit A").[4] Exhibit A stated Johnson was in default, but it is not clear if that default happened in 2015 (affidavit stated no payments were received in June, July, or August 2015) or in 2021 (affidavit stated Johnson's last payment was applied to September 1, 2021).

_____

[4] Exhibits also included the Property's note, mortgage, plot description, adjustable rate rider, assignment of the mortgage, HAMA forms, 2014 Modification Agreement, balloon payment disclosure, financial data dumps, tax records, the Mortgage Holder's July 9 letter previously presented by Johnson, and Johnson's answers to interrogatories.

Additionally, Exhibit A stated Johnson owed $253,463. To reach this number, the Mortgage Holder included the following accounting:

| | |
|---|---|
| $117,356 | Present Principal |
| $113,466 | Deferred Principal[5] |
| $6,317 | Interest (on Present Principal since 9/1/2021) |
| $16,001 | Escrow Balance |
| $355 | Property Inspection & Valuation |
| (-$32) | Johnson's Surplus Funds |
| $253,463 | Total Owed |

In response to the Mortgage Holder's motion for summary judgment and request for sale, Johnson moved for a bench trial or alternatively, mediation. He asserted there was an issue of material fact, supported by his discovery documentation, as to whether the Mortgage Holder's 2015 refusal to accept his payments prevented a finding of default. Johnson also challenged the accuracy of the Deferred Principal total.

In August 2024, the circuit court held a hearing. At this hearing, the Mortgage Holder stated, "it appears that the default date that we have alleged, that this loan has been paid through September 1, 2021." However, the Mortgage Holder went on to discuss the alleged 2015 default. The Mortgage Holder argued Johnson missed his June 2015 payment, which prompted the online payment option to be suspended in July 2015. Subsequently, Mortgage Holder asserted,

---

[5] $138,962 Deferred Principal - $43,087 2015 Forgiven 1/3 + $17,592 COVID deferred payments = $113,467. This equation did not appear in the motion, but was ascertained from the body of Exhibit A.

Johnson did not pay July or August 2015 payments – thereby missing three payments (in the second year after the 2014 Modification Agreement) – negating the remainder of his Reduction Amount (*i.e.*, two-thirds of the forgivable portion of the Deferred Principal). Mortgage Holder argued that after automatic withdrawals were stopped, Johnson had the burden to pay the Mortgage Holder by mail, phone, or some other direct method of payment, but he did not.

At the hearing, Johnson relayed to the court the communications that occurred the day prior between himself and the Mortgage Holder. Specifically, Johnson informed the Mortgage Holder that he was willing and able to resume payments and he was told the loan was eligible for reinstatement. The Mortgage Holder acknowledged that this mortgage had the possibility of being resumed. The court instructed the parties it would allow time for the parties to resolve the matter before ruling. However, the parties did not reach resolution, and in January 2025 the Johnson Circuit Court entered an order granting the Mortgage Holder's motion for summary judgment, awarding the full amount requested of $253,463 plus additional interest, dismissing Johnson's counterclaim, and referring the matter to the Master Commissioner for judicial sale ("2025 Order"). Johnson appealed.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the

-8-

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citations omitted).

Our Supreme Court has noted that "summary judgment is to be cautiously applied and should not be used as a substitute for trial." *Steelvest*, 807 S.W.2d at 483. "Granting a motion for summary judgment is an extraordinary remedy and should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" *Shelton*, 413 S.W.3d at 905 (quoting *Steelvest*, 807 S.W.2d at 483).

On appeal, Johnson argues summary judgment was improper because there are issues of material fact as to whether the Mortgage Holder prevented his payments in 2015, and if so, whether he should be credited additional funds toward his Reduction Amount. He asserts the Deferred Principal award in the 2025 Order is unsupported and inaccurately calculated.

To the contrary, the Mortgage Holder argues there are no issues of material fact and shifts its summary judgment burden to Johnson. The Mortgage

Holder asserts Johnson's contention that it prevented him from paying in 2015 was unsupported by "any" evidence,[6] and, as he did not show affirmative proof that he attempted to pay in 2015, summary judgment was proper. However, it was not Johnson's burden to prove he did not pay; it was the Mortgage Holder's burden to establish it was entitled to judgment as a matter of law, *i.e.*, that Johnson defaulted and when that default occurred. *See* CR 56.03 (providing that summary judgment requires no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law).

Here, strangely, the circuit court did *not* determine the Mortgage Holder was entitled to judgment as a matter of law. The circuit court skipped that step. The trial court awarded summary judgment and more than $250,000 *without first determining Johnson defaulted* on the loan. The 2025 Order found that Johnson *owed* on the loan, but that is not the same as finding default as the loan was not due to mature until 2035. A court must adjudicate indebtedness *before* ordering sale of the security. *Alexander v. Springfield Prod. Credit Ass'n*, 673 S.W.2d 741, 743 (Ky. App. 1984) (citation omitted); *see also Clay v. WesBanco*

_____

[6] On appeal, the Mortgage Holder argues, "Mr. Johnson also attached a few letters that he claims his previous attorney sent to counsel for the attorney representing Deutsche Bank in the separate legal matter. The letter is not evidence of payment or attempted payment or that Deutsche Bank refused to accept payments. It does not show proof of payment. It does not show attempts to make payments. It does not show refusal of the Deutsche Bank to accept payment. It only indicates that Mr. Johnson told his theory to his attorney but could not and did not provide proof of the same. Those letters were not enough to raise any genuine issue of material fact."

-10-

*Bank, Inc.*, 589 S.W.3d 550, 556 (Ky. App. 2019) (quoting *Alexander*, *supra*) ("We agree with *Alexander*'s notation that 'it seems only reasonable that the validity of the indebtedness should be adjudicated before sale of the security.'").

The Mortgage Holder presented inconsistent evidence as to when the pertinent default occurred. In its pleadings, the Mortgage Holder asserted Johnson defaulted in 2015 but then utilized the September 2021 missed payment as the pertinent default date (1) at the August 2025 hearing, (2) in its statement of fact within its appellee brief, and (3) for the interest accrual date (for the requested award). It appears Johnson paid on the loan in 2014, possibly defaulted in 2015, resumed payments in 2016, continued to pay until the 2020 COVID deferment, then allegedly never resumed after the COVID deferment ended around July 2021. Use of this 2015 date requires clarity as the alleged 2015 default is not the most recent alleged default by six years.

Moreover, the date of the default presents an issue of material fact because it could affect the amount of the award. For instance, if the pertinent default occurred in 2015 and the Mortgage Holder did not prevent or refuse payment at that time, Johnson is not likely to be entitled to the remaining two-thirds of the Reduction Amount. If the pertinent default occurred in 2021, the Mortgage Holder prevented Johnson from paying in 2015, and Johnson did not miss three full payments in the 12 (or 24) months after resuming payments in 2016,

-11-

then he may be entitled to one or two-thirds of the remaining Reduction Amount.[7] Given Johnson's history of nonpayment, this scenario is unlikely, but we are a court of review and are not permitted to make that factual finding. Even when the record reflects "grave doubt" as to a claimant's likely success, "he should be permitted to at least try. He should not be compelled to try his action on a motion for summary judgment." *Dugger v. Off 2nd, Inc.*, 612 S.W.2d 756, 758 (Ky. App. 1980) (citation omitted).

Therefore, the 2025 Order did not determine the Mortgage Holder was entitled to judgment as a matter of law, did not make sufficient findings, and there existed an issue of material fact. Hence, summary judgment in the absence of such findings was improper.

## CONCLUSION

In light of the foregoing, we VACATE the 2025 Order, and REMAND for additional proceedings consistent with this Opinion.

ALL CONCUR.

---

[7] Further adding to the factual confusion, on appeal, the Mortgage Holder argues "Forgiveness under the modification would only occur if Mr. Johnson made all of his payments on time for three years in a row." However, that appears distinct from the verbiage in the 2014 Modification Agreement allowing forgiveness of the Reduction Amount in increments as long as Johnson did not default "equivalent to three full monthly payments" within the relevant timeframe.

BRIEF FOR APPELLANT:

James D. Johnson, *pro se*
Paintsville, Kentucky

BRIEF FOR APPELLEE DEUTSCHE
BANK NATIONAL TRUST
COMPANY:

Laura C. Infante
Akron, Ohio